346

In re ESTATE of Edward R. McCON-
NELL, also known as Eddie Burl,
Deceased.

Administration No. 115192.

United States District Court
District of Columbia,
Holding a Probate Court.
June 1, 1967.

J. Gordon Forester, Jr., Washington,
D. C., for the estate.

Charles T. Duncan, Corp. Counsel, District of Columbia, Una Rita Quensted and Edmund L. Browning, Jr., Asst. Corporation Counsel, District of Columbia, for District of Columbia.

OPINION

MATTHEWS, District Judge.

To the first and final account of the administrator of the estate of the decedent, Edward R. McConnell, the District of Columbia has interposed an objection. The ground of the objection is that the administrator proposes to distribute the decedent's estate to Ernestine V. Prather and Nena Miller Jansen, that they are not heirs at law and next of kin of the decedent, and that the estate in question has escheated to the District of Columbia.

Born in Pensacola, Florida, on December 19, 1908, the decedent died intestate in the District of Columbia in 1965. His natural father was unknown. His mother left him as an infant with Mamie and Arthur McConnell who reared him as their own child. They gave him the family name of McConnell, and provided for his education, both secular and religious.

When the decedent was almost five years old he was baptized at St. Michael's Catholic Church in Pensacola, and described as the "adopted child of Arthur McConnell and Mamie McConnell." They are both dead, and it is unknown whether they agreed with the decedent's natural mother that they would formally adopt him. No court record has been found reflecting such an adoption.

The distributees listed by the administrator in his final account—Mrs. Prather and Mrs. Jansen—are natural children of Mrs. McConnell, and were reared as sisters of the decedent. When the decedent applied for an insurance policy in 1960 he listed Mrs. Prather as the beneficiary, and described her as his sister. The administrator refers to Mrs. Prather and Mrs. Jansen as "half-sisters of the deceased by equitable adoption", and as deceased's only heirs at law and next of kin. On the other hand, the District of

Columbia contends that the alleged half-sisters have no interest in the estate, and that it has escheated to the District.

■ Florida being the situs of the alleged adoption in this case, the law of that state on equitable adoption has significance. The leading Florida case bearing thereon is Sheffield v. Barry, 153 Fla. 144, 14 So.2d 417, Supreme Court of Florida, 1943. Involved there was a contract between the child's natural mother and the foster parents whereby the foster parents would adopt the child as their own. The child was treated and considered by her adoptive parents throughout their lives as their daughter and was by them represented to the community as being their lawfully adopted daughter. Similarly the adoptive parents represented to the child that she bore such a status. It was not until both adoptive parents were dead that the child learned that no proceedings had ever been instituted to effect the adoption. She sued for specific performance of the adoption contract to entitle her to participate in the intestate estate of her foster father. Under these circumstances, the court recognized the concept of an equitable adoption so as to allow the adoptee to inherit as a natural child.

■ It is clear from the case cited that Florida recognizes an equitable adoption. Had Edward R. McConnell, the decedent here, survived his foster parents and proved an adoption contract between his natural mother and his adoptive parents (Arthur and Mamie McConnell), he could have successfully claimed a portion of any intestate estate left by such adoptive parent or parents, even though formal adoption was never consummated.

■ However, the situation presented in the instant case is different. The question here is whether the natural children of the foster parent may inherit from the adoptee (Edward R. McConnell) where the statutory proceedings of formal adoption have never been met. In order for Mrs. Prather and Mrs. Jansen to be able to inherit from the adoptee

(Edward R. McConnell), it would seem that their natural parent, Mamie McConnell, through whom they claim, must have been able to inherit from the adoptee. The Florida Supreme Court in Sheffield v. Barry made it clear that what it was doing was not establishing an adoption, but, under the maxim "equity regards that as done which ought to have been done," was enforcing the adoption contract to secure for the adopted child a share in the estate of an intestate foster parent.

The case of Heien v. Crabtree, 369 S. W.2d 28, Supreme Court of Texas, 1963, is factually similar to the case at bar. There Frank and Rosa Frei, husband and wife, had allegedly agreed with the mother of an illegitimate boy that they would legally adopt him. Such an adoption did not take place but the child made his home with Mr. and Mrs. Frei until he was 22 years of age, and was known as R. F. Frei. He died unmarried and intestate, Mr. and Mrs. Frei having predeceased him. The estate of R. F. Frei was claimed by the heirs of Mr. and Mrs. Frei. In affirming a judgment that such heirs take nothing, the Supreme Court of Texas said in part:

Here, the heirs of Frank and Rosa Frei are asserting a right of intestate succession to the estate of R. F. Frei. It was their burden to allege a legal right of succession. They could discharge that burden by alleging and proving that R. F. Frei was either a natural child or an adopted child of Frank and Rosa Frei through whom they claim. Admittedly he was neither.

But petitioners contend that the doctrine of estoppel in pais should be applied both ways; that inasmuch as they would be estopped to assert that R. F. Frei was not an adopted child if he had survived Frank and Rosa and had sought to establish a right of inheritance to their estates, the administrator of his estate should be estopped to assert that he was not an adopted child when they, as heirs of Frank

and Rosa, seek to establish a right of inheritance to his estate. They assert that on this theory they have alleged a right of succession. How can that be? Petitioners' rights can be no better or higher than the rights of those through whom they claim. If Frank and Rosa had survived R. F. and were seeking to establish a right of succession to his estate, they would not be heard to claim the aid of equity. Through neglect or design they breached their agreement to adopt. More than that, there would be no basis in promises, acts or conduct on the part of R. F. upon which to erect an estoppel. Neither he nor his mother breached a duty to Frank and Rosa or in any way misled them to their detriment.*

Another case in point is that of Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397, at page 401, where the Supreme Court of Missouri said:

An equitable adoption functions to enforce the rights of the child under the agreement to adopt. The child is not chargeable with the adoptive parent's failure to record the deed, and the enforcement in equity of the agreement to adopt should not confer additional rights upon the adoptive parent. The right of inheritance from the child is a different right from that of the child to enforce the agreement to adopt. * * * [A] legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them, * * *.

In the District of Columbia there are several court decisions touching on equitable adoption.

There is an unreported decision of the United States District Court for the District of Columbia in Estate of Linnie G. Finney, Administration No. 81,052 (1954), where it was held that, as the prospective parents had contracted with a foundling home in 1892[1] to adopt the child, had taken him into their household and treated him as a member of the family, he should be treated as though he had been adopted, even though formal adoption was never consummated, and this being the case, "his son is in turn entitled to inherit through him and succeeds to his rights."

In Epstein v. Mesher, 118 U.S.App. D.C. 142, 333 F.2d 152 (1964), Mrs. Epstein, alleging that she was the adopted daughter of Jacob Voronoff by equitable adoption, had filed a caveat to set aside his will, and his executrix had moved to dismiss the caveat on the ground that Mrs. Epstein was not a "person in interest" so as to be entitled to file a caveat. The trial court held that the District of Columbia statutes relative to the legal adoption of children create an exclusive method for such adoption, found that Mrs. Epstein had never been legally adopted, and consequently dismissed her caveat. On appeal, while the trial court was affirmed, the appellate court stated in part:

We need not and do not decide whether the statutory method of adoption is exclusive, or whether the doctrine of equitable adoption also prevails in the District of Columbia, because under either, Mrs. Epstein must fail: there was no promise or contract to adopt which would support her equitable adoption theory and, admittedly, there was no statutory adoption.

The District of Columbia case of In Re Jarboe's Estate, 235 F.Supp. 505 (D.C., 1964), is similar to the instant case, in that in each the estate of an alleged adoptee is claimed in whole or in part by a descendant of the alleged adopting parent. The two cases differ in that in the instant case the daughters of Mrs. Mc-

---

* The dissenting opinion of GREENHILL and SMITH, JJ., as well as the Texas Code provisions cited therein indicate that the court might well have decided the case the other way. Heien v. Crabtree, 369 S.W.2d 28, at page 32.

[1]. There was no adoption statute in the District of Columbia at that time.

Connell, the alleged adopting parent, claim the estate of which their alleged brother died *intestate;* whereas in the Jarboe case the granddaughter of the alleged adopting parent claimed an interest in an estate of which Mr. Jarboe, the alleged adoptee, died *testate.* The claimant there asserted that as the niece of Mr. Jarboe she possessed the right to challenge his will on the ground that he was not of sound mind when he made it, and, should her challenge prove successful, to share in his estate. The decision of the court in Jarboe was that, assuming there was an equitable adoption of the adoptee, this would not give him the status of one legally adopted nor would it confer on the alleged niece any right to contest his will or to share in his estate.

It is an uncontested fact in the instant case that two people took a child into their hearts and home, and gave him the love, affection, shelter, and every other consideration afforded their natural offspring. What they had they shared with him in full measure. Likely their economic status was not such as to give rise to thoughts of inheritance. Mrs. Prather and Mrs. Jansen, the proposed distributees here, were known to the decedent as his sisters, members of the only family circle ever to hold him within its embrace. Yet the law is not kindly disposed toward claims to the estate of a deceased adoptee where they are made by the heirs of an adoptive parent who did not take legal steps to formalize the adoption. The Florida case, Sheffield v. Barry, 153 Fla. 144, 14 So.2d 417, relied on by the administrator does not support his proposal to distribute the decedent's assets to Mrs. Prather and Mrs. Jansen. This is because the Florida court specifically stated that it was not establishing an adoption but merely enforcing an adoption contract at the behest of an adoptee as against the estate of an intestate adoptive parent. Neither that case nor any District of Columbia case touching on equitable adoption is a precedent for a decree by this Court approving distribution of the estate of a deceased adoptee to the heirs of an adoptive parent who did not legally consummate the adoption. Accordingly, the objection of the District of Columbia to the account of the Administrator is sustained.