**Annie Jean HABECKER, Plaintiff-Appellant,**

v.

**Earl W. YOUNG, as Administrator of the Estate of Elizabeth T. Poppell, Deceased, Defendant-Appellee,**

**Herman Tedder and Bartow Tedder, Intervenors.**

**No. 72–2241.**

United States Court of Appeals, Fifth Circuit.

March 27, 1973.

Marion R. Shephard, Jacksonville, Fla., for plaintiff-appellant.

W. Dexter Douglass, Tallahassee, Fla., Byron Butler, Perry, Fla., for Young.

John H. Cotten, Tallahassee, Fla., John Weed, Perry, Fla., for Tedders.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant Annie Jean Habecker, plaintiff below, brought suit in the District Court for the Northern District of Florida seeking specific performance of a contract to adopt. The defendant is the administrator of the alleged foster mother's estate. The intervenors are brothers of the alleged foster mother and are her heirs at law. The district court entered summary judgment for the defendant. We reverse and remand for a trial on the merits.

I

We have determined that summary judgment in this case came too quickly and that more evidence is necessary to avoid possible injustice to any concerned party. The justification for this action is an equitable one, grounded on the theory that what should have been done will be done.

The basic facts are set forth by the pleadings and affidavits in the record. Appellant Habecker alleges that she was the beneficiary of a contract to adopt entered between her natural father, James Freeman, and Andrew and Elizabeth Poppell. Elizabeth Poppell died intestate in 1970. This action is basically a contest over the property of the deceased Elizabeth Poppell pitting the alleged "adopted" daughter against the brothers of the deceased who would take under the Florida intestacy statute. The cause of action is often referred to as "virtual adoption" or "equitable adoption" and has been recognized in Florida for several years. Sheffield v. Barry, 153 Fla. 144, 14 So.2d 417 (1943) and Roberts v. Caughell, 65 So.2d 547 (1953). The facts in the record tend to show that the appellant was raised as a

daughter by Andrew and Elizabeth and was recognized as such in the community. Virtually all of her youth was spent in the care of Andrew and Elizabeth until she married and left their home. James Freeman, natural father of appellant, is alive and allegedly was to testify as to the events surrounding the transfer of custody of the child in the mid 1930s. In the record before this court it is not clear exactly what this testimony would have precisely been. The opinion of the district court speaks of the representation of counsel that Freeman would testify to an arrangement concerning the child but that the word "adopt" was never used between the parties. This was apparently a significant point to the district judge in granting summary judgment.

We are of the opinion that the full testimony of Freeman is desirable and that it is extremely important to view the entire transaction or understanding between the parties in order to ascertain what the true arrangement was. We are not convinced that a sufficient agreement could not be shown even though the word "adopt" was never used.

■ We find no Florida case where the state court has passed on the necessity for the word "adoption" to be used by the parties in forming the "contract" later enforced by a court of equity. Other states have held that the failure to use the term "adopt" when assuming responsibility over the child is not fatal to imposition of the equitable doctrine. See Holloway v. Jones, 246 S.W. 587 (Mo.1922); Taylor v. Coberly, 327 Mo. 940, 38 S.W.2d 1055 (1931); Toler v. Goodin, 200 Ga. 527, 37 S.E.2d 609 (1946). In light of Forida's acceptance of the broad equitable notion of virtual adoption, we do not feel that the state courts would decide the issue solely on the technical ground that the word "adopt" was not used by the parties. Other language, evaluated with due regard for the parties involved and surrounding circumstances, could be suffi-

cient to establish the necessary contract. Furthermore, in our consideration of the case it has appeared that there is some conflict as to exactly what the representations of counsel which the district court took note of were. They are not in the record and the parties seem to dispute the exact content of any such statements. To avoid injustice and to allow for adequate review, we feel that a full and complete record of all relevant testimony is desirable.

■ There are other reasons why we think that summary judgment was improper in this case. Virtual adoption is an established doctrine usually invoked to avoid an unfair result from the application of intestacy statutes. Its underlying theories are drawn from the realm of contract law and the relevant elements include some showing of an agreement between the natural and adoptive parents, performance by the natural parents of the child in giving up custody, performance by the child by living in the home of the adoptive parents, partial performance by the foster parents in taking the child into the home and treating her as their child, and, finally, the intestacy of the foster parent. Sheffield v. Barry, supra. Much of each of these elements may have to be established by circumstantial evidence for often all parties but the child are deceased. For that reason, in virtual adoption cases it is essential to have as full a record as possible containing as much relevant evidence as possible. In this case the record is somewhat confused and disputed. Therefore, it appears to the court that a full evidentiary hearing would be helpful in establishing the true facts and the relationship between all the relevant parties.

## II

It is difficult to discern from the district court's order exactly what, if any, issues of law were felt to be controlling in this matter. As noted, we feel that under the record in this case it was premature to say that no agreement be-

tween the natural father and the foster parents had been shown. The facts stated in the district court's order and the issues of law argued by the parties in their briefs suggest that there were two possible additional holdings in favor of defendants as a matter of law.

First, an affidavit from the natural mother, who is still living, asserts that she never consented to any adoption by the Poppells. The allegations in the complaint tend to establish, however, that she and James Freeman were separated quite soon after the child's birth, that sometime later the father, James Freeman, was given legal custody of the child following a divorce, and that for the past 30-odd years the natural mother has had little, if anything, to do with her child. We feel full development of these facts would be helpful in the resolution of this issue.

Secondly, appellees make an issue of the fact that Andrew and Elizabeth Poppell were not yet married when the child first came to live with Andrew Poppell and his aged father. On the other hand, the facts tend to show there was at least some "understanding" between Andrew and Elizabeth and that their marriage was being postponed only because of the objections of Andrew's aged father. They were married soon after the father's death and raised Annie Jean in their home. In the opinion of the district court it is not evident what, if any, weight this factor was given.

We note that on both these last issues the appellees have made arguments based on Florida adoption law and public policies concerning adoption. As we are remanding this case for further proceedings, we do not feel it necessary to pass at this time on these possible legal issues since we are not assured that they were relied on by the district court below nor are we satisfied that the factual record surrounding them has been adequately developed.[1]

However, we desire to point out two factors which we feel may be relevant in future consideration of these issues below. Since virtual adoption cases generally arise after termination of the relationship because of death of the parents, state public policies relating to a legal adoption may not be weighed the same as they would be in a current adoption proceeding where the relationship is prospective in nature. Here the court is viewing what ought to be done in light of what has been done in the past, not what may happen in the future. Secondly, we think the court below, when and if it looks to state public policy on adoption, should take into consideration the adoption laws and attendant policies as they existed at the time the purported "contract" was made.[2]

For reasons stated in this opinion, we feel that summary judgment was improper and this case is reversed and remanded.

[1.] At one point in our consideration of this case, we sought aid of counsel in drawing up a proposed certificate to submit to the Florida Supreme Court for elucidation as to underlying Florida public policies which may be relevant to the ultimate resolution of this case. The difficulty of drafting an adequate certificate, coupled with the uncertainty as to what part, if any, policy resolutions were involved in the summary judgment below, have convinced this court that more complete findings of fact and law are necessary.

[2.] We note that the adoption laws in effect in Florida at the time this alleged "contract" was entered were quite simple. Fla.Stat.Ann. §§ 72.01–72.06 [Repealed, Laws 1943, c. 21759, § 20]. Basically, the law only required that a person publish an intention to adopt, that the proposed adoption be filed, and that a hearing be held before the proper circuit judge. Following the hearing the judge, in his discretion, could grant the petition and allow the adoption.

Thus, even if it is ultimately decided that the contracting parties must be fully able to carry out a legal adoption, we feel that the statute in effect at the time of contracting is extremely relevant and the factual situation should be analyzed in light of it. It might be that under then existing law, the circuit judge could allow adoption by a single person or without the express permission of one parent.