540 A.2d 799

**In re LYNN M.**

**No. 62, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 4, 1988.

462

James A. Shrybman and Harvey Schweitzer, Takoma Park, for appellant.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

COLE, Judge.

The question in this appeal is whether the circuit court erred in dismissing a petition for adoption of an infant child on the grounds of lack of jurisdiction.

I

Adoptions were unknown at common law and exist today solely because of statute. The first Maryland statute addressing this subject is found in the Acts of 1892, ch. 244, later codified in Article 16, §§ 62A to 62F, and today found in Md.Code (1984, 1987 Cum.Supp.) §§ 5–301 to 5–330 of the Family Law Article. The predominant theme of all these enactments has been to preserve and protect the interests and welfare of the child. *See Washington County Dep't of Social Serv. v. Clark,* 296 Md. 190, 461 A.2d 1077 (1983); *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1977); *Lippy v. Breidenstein,* 249 Md. 415, 240 A.2d 251 (1968); *Beltran v. Heim,* 248 Md. 397, 236 A.2d 723 (1968); *King v. Shandrowski,* 218 Md. 38, 145 A.2d 281 (1958); *Winter v. Director,* 217 Md. 391, 143 A.2d 81 (1958); *see also Courtney v. Richmond,* 55 Md.App. 382, 462 A.2d 1223 (1983). We point out the pertinent parts of the present adoption statute which impact upon the decision in this case.

Section 5–303(b)(1) indicates that the purpose of the statute is to protect

(1) children from:

(i) unnecessary separation from their natural parents; and

(ii) adoption by individuals who are unfit for the responsibility;

(2) natural parents from a hurried or illconsidered decision to give up a child; and

(3) adoptive parents:

(i) by providing them information about the child and the child's background; and

(ii) from a future disturbance of their relationship with the child by a natural parent.

Section 5–301 makes clear that adoptions may be initiated through a child placement agency, which may be either a local department of social services or a private agency licensed by the State. Adoptions may also be initiated independent of a child placement agency, as by an individu-

al. When the agency is involved usually its staff investigates to find suitable and fit parents for the child. When independent adoptions are effected, it is usually the adoptive parent(s) who seeks out the child to adopt by some form of advertisement or in some cases through attorneys.[1]

Section 5–307 provides that both minors and adults may be adopted while § 5–309 provides that any adult, whether married or single, is eligible to adopt. However, if the petitioner is married, the petitioner's spouse must join in the petition. *See* § 5–315.[2]

The legal effects of an adoption are discussed in § 5–308(b) which provides:

**In general.**—Except as otherwise provided in this section, after a decree of adoption is entered:

(1) the individual adopted:

(i) is the child of the petitioner for all intents and purposes; and

(ii) is entitled to all the rights and privileges of and is subject to all the obligations of a child born to the petitioner in wedlock;

---

1. As a general rule, when an agency is involved in the adoption process, the child is placed in foster care while the agency determines whether the prospective adoptive parents are fit for parenthood. In independent adoptions the natural parents and prospective adoptive parents negotiate either directly or through attorneys. Since no agency is involved the natural parents have greater control over the selection of the adoptive parents and often release the child into the temporary custody of the adoptive parents pending the final act of the court granting adoption. For discussions of the relative strengths and weaknesses of both of these adoption vehicles *see* Note, *Parental Consent: The Need for An Informed Decision in the Private Adoption Scheme,* 47 La.L.Rev. 889 (1987); Note, *Independent Adoption: The Inadequacies of State Law,* 63 Wash.U.L.Q. 753 (1985); Note, *Babes and Barristers: Legal Ethics and Lawyer—Facilitated Independent Adoptions,* 12 Hofstra L.Rev. 933 (1984). *See also* P. Messite & H. Hunter, *Independent Adoptions,* Maryland Bar Journal 28 (Jan.—Feb. 1988).

2. Md.Rule D72(a) lists the required contents of a petition for adoption. Md.Rule D72(b) relates to the contents of a petition for guardianship.

(2) each living natural parent of the individual adopted is:

(i) relieved of all parental duties and obligations to the individual adopted; and

(ii) divested of all parental rights as to the individual adopted; and

(3) all rights of inheritance between the individual adopted and the natural relatives shall be governed by the Estates and Trusts Article.

Of fundamental importance to the entire adoptive process is the consent of the natural parents. In this regard, § 5–311 provides, in part

(a) **In general.**—Unless the natural parents' rights have been terminated by a judicial proceeding, an individual may not be adopted without the consent of:

(1) the natural mother;

(2) the natural father; and

(3) the individual, if the individual is at least 10 years old.

· · · · ·

(c) **Revocation of consent.**—(1) Except as provided in paragraph (2) of this subsection, within 90 calendar days after the required consent to an adoption is filed under this section, or any time before a final decree of adoption is entered, whichever occurs first, the individual or agency executing the consent may revoke the consent.

(2) An individual to be adopted may revoke the individual's consent at any time before a final decree of adoption or an interlocutory decree of adoption is entered.

(3) Except as provided in paragraphs (1) and (2) of this subsection, the required consent to an adoption filed under this section may not be revoked at any time by the individual or agency executing the consent.

Under § 5–314(a) consent of a natural parent is not valid "unless the consent contains an express notice of the right to revoke consent under § 5–311 or § 5–317 . . . ." Further, § 5–314(b) mandates that the "consent of a minor parent is

not valid unless the consent is accompanied by an affidavit of counsel appointed under § 5–323 ... that the consent of the minor parent is given knowingly and willing [sic]." In this connection § 5–323(a)(3) requires that: "In a proceeding for an adoption ... the court shall appoint separate counsel to represent a minor parent."

The statute also contains a provision providing that a person rendering service in connection with the placement of an individual for adoption may not receive compensation for the placement. However, customary charges or fees for hospital, medical, or legal services are permitted. *See* § 5–327(a). A violation of this section is a misdemeanor. *See* § 5–327(d). We further note that § 5–324 precludes the entering of a final adoption decree until at least 15 days after the birth of the child to be adopted. *See also* Md.Rule D79.

In terms of jurisdiction, § 1–201(a)(1) and (5) of the Family Law Article provides that an equity court has jurisdiction over the adoption, custody, or guardianship of a child. The circuit courts in this state have full equity powers and jurisdiction. *See* Md.Code (1974, 1984 Repl. Vol.) § 1–501 of the Courts and Judicial Proceedings Article. Accordingly, the circuit courts have the exclusive power to sever the legal ties between parent and child by allowing the adoption of the child by another. *In re Darius A.*, 47 Md.App. 232, 235, 422 A.2d 71, 72 (1980).

## II

The facts to which this law must be applied are as follows. The petitioners, Colonel Gene L. Juve and his wife, Penny, residents of Fairfax, Virginia, at the start of these proceedings in 1985, desired to adopt a child.[3] Because of the transient nature of Colonel Juve's Air Force service, the couple decided to pursue an independent adoption rather

---

**3.** The record indicates that the Juves moved to Moody Air Force Base, located in the State of Georgia, in February, 1986.

than seek an adoption through an agency. The Juves placed several classified advertisements in a variety of newspapers and were subsequently contacted by a young, married couple from Prince George's County, Maryland, who were expecting a child. After meeting with the Juves, the parties agreed that the Juves would adopt the child after its birth, and that the Juves would assume responsibility for the payment of any expenses related to the pregnancy.

The child, Lynn M., was born on September 28, 1985, in Prince George's County General Hospital. When the child and her mother were discharged from the hospital several days later, the natural parents, to avoid the formation of emotional ties to the child, allowed the Juves to assume temporary custody of Lynn M.

Immediately thereafter, on October 4, 1985, the Juves, with the aid of a local attorney, filed a petition for adoption of Lynn M. in the Circuit Court for Prince George's County. Specifically, the petition requested that the court enter a final decree of adoption, change the name of the child, seal the papers filed in the case, and grant any other relief deemed just and proper. The petition for adoption was accompanied by a pre-placement investigative report completed by a clinical social worker. The report recommended that the Juves be the adoptive parents "without reservation." Also attached was an affidavit executed by the petitioners describing the method employed in effecting the placement of the child. The pleadings also included several documents filed by the natural parents of Lynn M. wherein they joined the petition of adoption as parties, specifically consenting to the adoption, waiving the right to future notice, and executing a power of attorney which granted temporary custody of the child to the Juves. The natural parents filed these documents *pro se,* apparently however, with the assistance of the attorney representing the Juves.

On October 28, 1985, the circuit court (Woods, J.) confirmed the act of the natural parents by granting temporary

custody and guardianship of Lynn M. to the Juves.[4]  Meanwhile, the court ordered an investigation of the parties by the Department of Juvenile Services,[5] and requested that counsel for the Juves submit an order for the appointment of an attorney to represent the natural mother who was a minor at the time the petition was filed.[6]  The circuit court (Loveless, C.J.) also referred the case to the Prince George's County State's Attorney's Office for an investigation of a possible violation of § 5–507 which regulates the private placement of children.[7]

The Department of Juvenile Services submitted a comprehensive report to the circuit court on March 5, 1986, which contained information regarding the natural parents, the prospective adoptive parents, and the child to be adopted. The report recommended that a decree of adoption be granted.

Counsel for the Juves filed a motion for hearing which hearing was held on November 3, 1986, before Chief Judge Loveless.  After the proceeding was underway, Chief Judge Loveless, sua sponte, raised the question of whether the circuit court had jurisdiction to entertain the petition since the child and the adoptive parents were residing in Virginia. He directed the Juves' attorney to file a memorandum citing

---

4.  Rule D78(d) allows the court to make a temporary award of custody of a minor prior to a hearing and prior to an interlocutory decree of adoption if such action is in the best interests of the child.

5.  Md.Rule D75(b) gives the court the *discretion* to order an investigation of the facts of the case by any person or agency so designated. The investigation may be ordered whether the proceeding is contested or not.

6.  Section 5–323(a)(3) requires that separate counsel be appointed by the court to represent a minor parent.  There is no indication in the record that counsel for the Juves complied with the court's request. Accordingly, the natural mother's original consent to the adoption was invalid.  The natural mother filed another document of consent on August 28, 1986.

7.  There is no indication in the record that the State's Attorney discovered a violation of § 5–507.  The issue was not raised in this appeal and will not be addressed.

authority for the court's jurisdiction. A memorandum was filed on January 7, 1987, but Chief Judge Loveless, unpersuaded, dismissed the petition without prejudice on February 4, 1987, on the grounds that venue was not proper in Prince George's County under Md.Code (1974, 1984 Repl. Vol.) § 6–203(e) of the Courts and Judicial Proceedings Article. Chief Judge Loveless reasoned that

> venue is thus a component part of overall jurisdiction. When we analyze the five items [8] ... which give a county in this state venue, it is noted that this factual situation does not meet any of the said conditions. Accordingly, there is no geographic area in the state which could consider the petition. It must therefore be concluded that Maryland has no jurisdiction.

The petitioners appealed to the Court of Special Appeals. This Court granted certiorari prior to a determination by the intermediate appellate court.

## III

The Circuit Court for Prince George's County decided, sua sponte, that Maryland was not a proper forum for this adoption proceeding. Apparently the court presumed that since the child had been removed beyond state boundaries by the petitioners when the proceedings were instituted that the child was no longer domiciled in Maryland. Furthermore, since the petitioners were residents of Virginia, the

---

8. The trial judge was referring to Md.Code (1974, 1984 Repl.Vol.) § 6–203(e) of the Courts & Judicial Proceedings Article which provides:

(e) **Adoption.**—The venue for a proceeding for adoption of a person who is physically within the State or subject to the jurisdiction of an equity court is in a county in which:

(1) The petitioner is domiciled;

(2) The petitioner has resided for at least 90 days next preceding the filing of the the the petition;

(3) A licensed child placement agency having legal or physical custody of the person to be adopted is located;

(4) The person to be adopted is domiciled, if he is related to the petitioner by blood or marriage or is an adult; or

(5) An equity court has continuing jurisdiction over the custody of the person to be adopted.

trial court concluded that there was neither venue nor jurisdiction in the Circuit Court for Prince George's County to entertain the petition. As we see it, the issue perceived by the circuit court did not exist. We explain.

■ The jurisdiction of an equity court was discussed in *Moore v. McAllister*, 216 Md. 497, 507–508, 141 A.2d 176, 182 (1958).

[J]urisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought. (Citation omitted). To ascertain whether a court has power, it is necessary to consult the Constitution of the State and the applicable statutes. These usually concern two aspects: (a) jurisdiction over the person—obtained by proper service of process and (b) jurisdiction over the subject matter —the cause of action and the relief sought.... [J]urisdiction over the person and the subject matter goes to the very basic *power* of the equity court. If jurisdiction is lacking in this sense, a decree rendered by the court would be void.

*See also Stewart v. State*, 287 Md. 524, 526–27, 413 A.2d 1337, 1338 (1980); *Zouck v. Zouck*, 204 Md. 285, 302, 104 A.2d 573, 580 (1954); *Seidlitz v. Seidlitz*, 23 Md.App. 327, 333, 327 A.2d 779, 783 (1974); *Stewart v. State*, 21 Md.App. 346, 348, 319 A.2d 621, 622 (1974). On the other hand, venue concerns the proper locality in which a court of appropriate jurisdiction can adjudicate a case. *See Stewart*, 21 Md.App. at 348, 319 A.2d at 622. Venue statutes operate to promote the convenience of the parties. *See* 77 Am.Jur. 2d *Venue*, § 1 (1975).

■ Clearly, the circuit courts of this state have the power to grant adoptions. *See* § 1–201 of the Family Law Article. The question implicit in the circuit court's decision in this case seems to be whether it has jurisdiction over nonresidents who petition for adoption of a child. The Maryland adoption statute is silent on this matter. However, we believe this Court has provided the answer in

unmistakable language. As we said in *Waller v. Ellis*, 169 Md. 15, 23–24, 179 A. 289, 293 (1935),

> [s]ince the whole purpose of the statute is to insure the welfare of the infant, it is not apparent why in a proper case that end may not be as well served upon the application of a nonresident as by that of a resident.... It is the character of the adoptive parent, and not his residence, which should and does concern the court. Under the statute adopted in this state the proceeding is judicial rather than administrative, and the courts ordinarily are open to nonresidents as well as to residents.

Thus, there is no statutory reason prohibiting the court from entertaining the Juves' petition for adoption. The question is whether the court's personal jurisdiction over them is, by itself, sufficient to effect a decree of adoption in the best interests of the child. Clearly, it would not be sufficient because the rights of the natural parents would still be outstanding. Here, there is more, however. The natural parents not only filed their consent to the adoption but also joined in the petition requesting that their child be adopted by these petitioners. Significantly, the natural parents resided and were domiciled in Prince George's County. Therefore, the natural parents having joined the proceedings, the trial court had personal jurisdiction over them as consenting parties.

The only possible remaining impediment to the court granting the relief prayed is if the child is not presently domiciled in Maryland because the adoptive parents have the child in their custody outside the state boundaries. Clearly, the child was domiciled with its natural parents in Maryland at the time of its birth. *See Liberty Mut. Ins. Co. v. Craddock*, 26 Md.App. 296, 302, 338 A.2d 363, 367 (1975) (citing 1 J. Beale, *Conflict of Laws* § 14.1 (1935); Restatement (Second), *Conflict of Laws* § 14 (1971)). Equally clear is the fact that the parties (both natural and adoptive parents) had agreed that the child would remain in the *temporary* custody of the adoptive parents pending the final judgment of the court granting adoption. This agree-

472

ment was reviewed and confirmed by the circuit court on October 4, 1985. Furthermore, there is no contention by the Juves that they have any more than temporary custody pending a final decree of adoption. Under these circumstances the domicile of Lynn M. has never changed and remains in Maryland within the venue of the Circuit Court for Prince George's County. *See Krakow v. Dep't of Pub. Welfare*, 326 Mass. 452, 95 N.E.2d 184 (1950); *Matter of Adoption of a Child by McKinley*, 157 N.J.Super. 293, 384 A.2d 920 (1978); *In re Adoption of _____*, 22 N.J.Misc. 181, 37 A.2d 645 (1944); *Cribbs v. Floyd*, 188 S.C. 443, 199 S.E. 677 (1938).

Therefore, the circuit court had both subject matter and personal jurisdiction to determine if a decree of adoption should be granted to the petitioners and it was error to dismiss the petition on this ground.

JUDGEMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. PETITIONERS TO PAY THE COSTS.