635 A.2d 373

BOARD OF EDUCATION OF MONTGOMERY
COUNTY, Maryland

v.

Paula M. BROWNING, Personal Representative
of the Estate of Eleanor Hamilton.

No. 50, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 10, 1994.

282

Roger W. Titus (Elisabeth S. Rubin, Venable, Baetjer and Howard, on brief), Rockville, for appellant.

Christopher L. Beard (Jacqueline J. Judd, on brief), Annapolis, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, * CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case involves the concept of equitable adoption, and in particular, whether a person, if equitably adopted, may inherit by intestate succession from the sister of an equitably adoptive parent.

## I

Eleanor G. Hamilton, a resident of Montgomery County, died intestate in August, 1990, leaving an estate valued at $394,405.57. At the time of her death, Hamilton had no known living blood relatives. Appellee Paula M. Browning was appointed Personal Representative of the Estate of Eleanor G. Hamilton on May 21, 1991.

Paula was born out of wedlock on October 4, 1919. Her natural father, Lawrence E. Hutchison, legally adopted Paula on October 10, 1921. In March of 1922, Hutchison married Marian Estelle Gibson. Paula grew up in the Hutchison's household in the District of Columbia; Marian, however, never formally adopted Paula. Marian, who died in 1986, was the sister of the decedent Eleanor Hamilton.

Because Eleanor apparently died without any heirs, the Board of Education of Montgomery County claimed that it was entitled to Eleanor's estate pursuant to the Maryland

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

escheat laws.[1]  Believing that she was a legal heir of Eleanor, Paula filed a complaint for declaratory judgment and a motion for summary judgment in the Circuit Court for Montgomery County.  In her complaint, Paula named the Board of Education as defendant because the Board had a potential claim to the proceeds of Eleanor's estate through the escheat laws. Paula sought a declaration that she was the equitably adopted child of Marian;  and as such was entitled to inherit the Estate of Eleanor G. Hamilton, Marian's sister.

In support of her motion for summary judgment, Paula submitted an affidavit in which she stated that she maintained a normal child-parent relationship with Lawrence and Marian Hutchison throughout her life.  She also stated that Lawrence and Marian told her when she was a child, and later when she was an adult, that she had been adopted by them;  moreover, Paula stated that Marian specifically told her in 1984 that Marian had adopted her.  In 1992, when she was asked to produce proof of adoption for the instant litigation, Paula discovered that she had not been legally adopted by Marian. In her affidavit, Paula also stated that no other heirs had presented or filed claims regarding Eleanor's estate.

The Board of Education of Montgomery County, pursuant to Maryland Rule 2–322(b), filed a motion to dismiss for failure to state a claim upon which relief can be granted.  The Board maintained that Paula's complaint failed to allege facts which would enable a court to declare that she was the equitably adopted child of Marian.  The Board further averred that, even if Paula were adjudged to be the equitably adopted daughter of Marian, she could not, as a matter of law, inherit from the estate of her equitably adoptive mother's sister.  The Board therefore argued that because Eleanor Hamilton died without a will and without any legal heirs, it was entitled to her estate under the Maryland law of escheat,

---

1.  "Escheat" is a term which signifies that property reverts to the state where no individuals exist who are entitled to inherit the property.  *See United States v. Board of Com'rs of Public Sch.*, 432 F.Supp. 629, 630 (D.Md.1977).

as set forth in Maryland Code (1991 Repl.Vol., 1993 Cum. Supp.) § 3–105(a) of the Estates and Trusts Article. Specifically, the Board asked the circuit court to grant its motion to dismiss and declare that: (1) Paula is not entitled to inherit from Eleanor's estate; and (2) the estate escheats to the Board of Education of Montgomery County.

After a December, 1992 hearing, the court concluded that the Board of Education had conceded that Paula was the equitably adopted child of Marian.[2] The court therefore framed the sole remaining issue as follows: "whether Paula Browning, as the equitably adopted daughter of Marian Hutchison, may inherit as a collateral heir to the estate of Marian Hutchison's sister, Eleanor G. Hamilton."

Relying on *First Nat. Bank in Fairmont v. Phillips*, 176 W.Va. 395, 344 S.E.2d 201 (1985), upon the fact that the Board of Education was the only other party interested in the Hamilton estate, and on the close relationship between Paula and her equitably adoptive mother, the court determined that Paula could inherit from the estate of her equitably adoptive mother's sister. Thus, the court denied the Board's motion to dismiss and granted Paula's motion for summary judgment. The Board appealed to the Court of Special Appeals. We granted certiorari prior to consideration of the appeal by the intermediate appellate court to decide the significant issue presented in this case 331 Md. 178, 626 A.2d 967.

## II

Before us, the Board reasserts its view that an equitably adopted child may not inherit from her equitably adoptive parent's sibling. On the other hand, Paula argues that the lower court correctly ruled, as a matter of law, that a child may inherit by intestate succession from the sister of an equitably adoptive parent thereby defeating an escheat to the State.

---

**2.** In its brief, the Board states that this conclusion by the lower court was erroneous because it argued throughout the case that the claim of equitable adoption was "questionable."

The Board also contends that the lower court improperly granted Paula's motion for summary judgment because the court failed to consider the elements of equitable adoption and the evidence fell far short of the clear and convincing proof necessary to establish an equitable adoption. We need not address this argument, however, because even assuming *arguendo* that Paula was equitably adopted by Marian, we conclude that Paula may not inherit from her equitably adoptive parent's sister. Therefore, the trial court should have granted the Board's motion to dismiss and declared that the Estate of Eleanor G. Hamilton escheats to the Board of Education of Montgomery County.

When analyzing a motion to dismiss pursuant to Maryland Rule 2–322(b), we must accept as true all well-pleaded facts and allegations in the complaint. *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993). Dismissal is only proper if the facts and allegations viewed in the light most favorable to the plaintiff fail to afford the plaintiff relief if proven. *Id.; Berman v. Karvounis*, 308 Md. 259, 264–65, 518 A.2d 726 (1987); *Sharrow v. State Farm Mutual*, 306 Md. 754, 768, 511 A.2d 492 (1986). Moreover, "any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Figueiredo–Torres v. Nickel*, 321 Md. 642, 647, 584 A.2d 69 (1991) (quoting *Sharrow, supra,* 306 Md. at 768, 511 A.2d 492).

For purposes of our analysis, we accept as true the factual allegations of Paula's complaint for declaratory judgment and motion for summary judgment. Thus, we will assume that Paula is the equitably adopted daughter of Marian Hutchison, Eleanor Hamilton's sister.

### III

#### A. *Equitable Adoption*

In Maryland, the general rule is that there can be no adoption except under and in accordance with a statute. *See In re Adoption No. 9979*, 323 Md. 39, 43, 591 A.2d 468 (1991);

*In re Lynn M.*, 312 Md. 461, 463, 540 A.2d 799 (1988); *McGarvey v. State*, 311 Md. 233, 236, 533 A.2d 690 (1987). There is a narrow exception to this rule, however; equitable adoption, sometimes referred to as "adoption by estoppel," "virtual adoption," or "de facto adoption," permits individuals to circumvent the statutory adoption procedures for certain limited purposes. *See McGarvey, supra; Besche v. Murphy*, 190 Md. 539, 59 A.2d 499 (1948). Under the doctrine of equitable adoption, however, no relationship of parent and child is created and consequently, an equitably adopted child does not attain the status of a statutorily adopted child. *McGarvey*, 311 Md. at 239–40, 533 A.2d 690.

■ The doctrine of equitable adoption "involves the notion that if an individual who is legally competent to adopt a child enters into a contract to do so, and if the contract is supported by consideration in the form of part performance that falls short of completion of statutory adoption, then a court, applying equitable principles, may accord to the child the status of a formally adopted child for limited purposes." *McGarvey*, 311 Md. at 234, 533 A.2d 690. We have explained that when there is a valid contract for adoption, although not consummated and given legal effect by adoption proceedings during the lifetime of the adopting parent, the contract may, upon the parent's death, be enforced to the extent of decreeing that the child occupy the status of an adopted child in equity, entitled to rights of inheritance from the adoptive parent where circumstances require such relief as a matter of justice. *See Besche, supra*, 190 Md. at 547, 59 A.2d 499.

■ In *McGarvey, supra*, we stated that "Maryland would likely look with favor upon the doctrine [of equitable adoption] to the extent of permitting an equitably adopted child to take property from an equitably adoptive parent by intestate succession." 311 Md. at 238.[3] The basis of this doctrine, which

---

**3.** The elements required to establish an equitable adoption are: "[s]ome showing of an agreement between the natural and adoptive parents, performance by the natural parents of the child in giving up custody, performance by the child by living in the home of the adoptive parents,

permits a child to share in the estate of the deceased parent who had agreed to adopt the child, is that it is inequitable and unjust to allow the parent to escape the obligations of an adoptive parent by failing to comply with the agreement. *See Thompson v. Moseley,* 344 Mo. 240, 125 S.W.2d 860, 862 (1939).

This equitable principle of law has been explained under two different theories. The first theory is specific performance of the contract to adopt. Applying this theory, courts enforce the promise of the adoptive parent provided that sufficient consideration is given in return for the promise of adoption. However, "[c]ourts grant this remedy only against the estate of a deceased promisor." *See* Note, *Equitable Adoption: They took him into their home and called him Fred,* 58 Va.L.Rev. 727, 730 (1972). The second theory is estoppel under which the personal representative of the estate of the adoptive parent is estopped from asserting that the child was not an adopted child. Specifically:

"[estoppel operates] to preclude adoptive parents and their privies [*i.e.,* the estate] from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of adopted child."

*Jones v. Guy,* 135 Tex. 398, 143 S.W.2d 906, 908 (1940). It is not important which theory is employed because the application of the doctrine of equitable adoption is the same. *See* Note, *supra,* 58 Va.L.Rev. at 736–38. The courts under either theory focus upon the equities involved and require "clear and convincing evidence" of the adoption contract. *See McGarvey, supra,* 311 Md. at 238, 533 A.2d 690.

---

partial performance by the foster parents in taking the child into the home and treating [the child] as their child, and the intestacy of the foster parent." *Lee v. Gurley,* 260 Ga. 23, 389 S.E.2d 333, 334 (1990); *see also Habecker v. Young,* 474 F.2d 1229, 1230 (5th Cir.1973).

In formally recognizing the doctrine of equitable adoption in Maryland, *McGarvey* relied on *Besche, supra,* where we said:

> " 'the authorities very generally establish the proposition, that a parol obligation by a person to adopt the child of another as his own, accompanied by the virtual though not statutory adoption, and acted upon by both parties during the obligor's life, may be enforced upon the death of the obligor, who dies without disposing of the property by his will;' ... [this proposition] seems to be supported by the weight of authority in this country to the extent that the courts decree that a child so treated will be entitled to a right of inheritance from the estate of the foster parent such as a natural child would enjoy, where the child in question has faithfully and fully performed the duties of a natural child to the foster parents."

190 Md. at 546, 59 A.2d 499 (quoting in part *Clayton v. Supreme Conclave, Improved O. of H.,* 130 Md. 31, 36–37, 99 A. 949 (1917)). *Besche* further stated:

> "[B]ased upon the maxim that equity considers that done which ought to be done, ... '[i]t is now firmly established that an oral agreement to adopt, where there has been a full and faithful performance on the part of the adoptive child, but which was never consummated by formal adoption proceedings during the life of the adoptive parent, will, upon the death of the latter, and when equity and justice so requires, be enforced to the extent of decreeing that such child occupies in equity the status of an adopted child, entitled to the same right of inheritance from so much of his foster parent's estate that remains undisposed of by will or otherwise, as he would have been had he been a natural born child.' "

190 Md. at 547, 59 A.2d 499 (quoting in part *Burdick v. Grimshaw,* 113 N.J.Eq. 591, 168 A. 186, 188 (1933)).

Maryland therefore recognizes the doctrine of equitable adoption as it applies to an equitably adopted child who seeks to inherit by intestate succession from the estate of an equitably adoptive parent. *McGarvey,* 311 Md. at 238–39, 533 A.2d

690. A majority of other jurisdictions also recognize the doctrine to the extent of permitting an adoptee to inherit from an equitably adoptive parent's estate. *See* George A. Locke, Annotation, *Modern Status as to Equitable Adoption or Adoption by Estoppel*, 97 A.L.R.3d 347 (1980 & Supp.1993). However, few courts apply the doctrine "as we move beyond the subject of inheritance by an equitably adopted child from an equitably adoptive parent." *McGarvey*, 311 Md. at 239, 533 A.2d 690.

B.  *The Scope of the Doctrine of Equitable Adoption*

■   As we earlier discussed, the doctrine of equitable adoption does not affect the status of the child; it merely entitles the adopted child to inheritance rights from the adoptive parent. *See McGarvey*, 311 Md. at 239–40, 533 A.2d 690. In the instant case, Paula asks us to extend the doctrine of equitable adoption so that an equitably adopted child may inherit from her equitably adoptive parent's sibling, thereby defeating an escheat to the Board of Education. In other words, Paula argues that an equitably adopted child may inherit *through,* as opposed to from, her equitably adoptive parent.

Although Maryland has never considered this issue, a few jurisdictions have addressed it. In *Menees v. Cowgill,* 359 Mo. 697, 223 S.W.2d 412 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950), the Supreme Court of Missouri faced the question of whether a "daughter" could inherit from her equitably adoptive "father's" sister. There, the court stated:

"While it is in effect admitted that the ["daughter"] would have been entitled to a decree of equitable adoption against [her putative father] during his lifetime, or against his heirs at law or his personal representatives after his death, entitling her to inherit from him as an adopted daughter, she is not entitled to such a decree as against the collateral kin of his sister, who were not parties to the adoption contract and who are not bound thereby. No equities exist in her favor as against them authorizing a decree of equitable adoption by him as against them.... A decree for

equitable adoption of [the "daughter"] by [her putative father] in this proceeding against the collateral heirs of [the putative father's] sister would be wholly unauthorized.

*Id.* 223 S.W.2d at 418. The Supreme Court of Missouri continued:

> If [the putative father] had legally adopted [the "daughter"] in compliance with statutory requirements, the adoption would have been binding on all persons, . . . but in an equitable proceeding based upon contract, only the parties thereto, or those in privity with them are bound. Equity acts only against specific individuals and, in such case, one person may be bound and not another. A decree of equitable adoption merely forecloses 'the parties to the suit against a denial of the status that the court declares' and the status decreed exists only in equity and against the judgment defendants. As between [the parties in the instant case], [the "daughter"] was not, in either law or equity, the adopted child of [the putative father] by reason of his contract to adopt her."

*Id.* The court therefore determined that the "daughter" could not inherit *through* her equitably adoptive "father;" *i.e.,* from her "adoptive aunt's" estate.

Similarly, in *In re Estate of Olson,* 244 Minn. 449, 70 N.W.2d 107 (1955), the Supreme Court of Minnesota addressed the question of whether an equitably adopted child could inherit from his equitably adoptive parent's brother. In that case, Johnny O. Olson, the equitably adoptive son of Gilbert K. Olson's brother, sought to inherit from the estate of Gilbert K. Olson as an adoptive nephew. The court summarized its position as follows:

> "We believe that an equity court, weighing the equities involved, may . . . treat the situation as though the relationship of parent and child had been established and *may allow the child to inherit from the estate of the one promising to adopt.* However, in our opinion, the relationship thus enforced does not create a legal adoption as provided in our statutes. When the words 'equitable adoption' are used, it

is our opinion that the court, under its general equity powers, merely is treating the situation as though the relationship had been created between the one promising to adopt and the beneficiary of that promise."

*Id.* 70 N.W.2d at 110. (emphasis added) The court then explained that the doctrine does not permit equitably adopted children to inherit *through* their equitably adoptive parents. Thus, the court stated "no equities have been shown in favor of Johnny O. Olson and against the heirs of Gilbert K. Olson; therefore, in our opinion, he has no rights in the estate of [his equitably adoptive parent's brother,] Gilbert K. Olson." *Id.*

In *Pouncy v. Garner,* 626 S.W.2d 337 (Tex.Ct.App.1981), appellant Pouncy sought to recover a share of the estate of his equitably adoptive parents' natural daughter. In other words, Pouncy sought to inherit as the decedent's adopted brother. Appellees argued that, even if Pouncy was equitably adopted by the decedent's parents, Pouncy was not entitled, as a matter of law, to inherit from the decedent as her adopted brother. Agreeing with the appellees, the court stated:

"Appellant Pouncy is *not* seeking to recover a share of the estate of [his equitably adoptive parents]; instead, he is seeking to inherit the estate of Lula D. Dailey as her equitably adopted brother on the grounds that her parents were estopped to deny such adoption.

Under adoption by estoppel, only the adoptive parents and their privies are estopped to deny the adoption. The estoppel to deny the adopted status does not operate or work against collateral kindred not in privity with the adoptive parents. A child adopted by estoppel does not inherit from collateral kindred, as there is no privity of estate between such kindred and the adoptive parents."

*Id.* at 341–42. (emphasis in original). The court concluded: "Thus, even if Pouncy had established that he was adopted under the estoppel doctrine ..., he would not inherit from Lula as her equitably adopted brother." *Id.* at 342.

The West Virginia Supreme Court of Appeals, however, has permitted an equitably adopted child to inherit *through* an

equitably adoptive parent under limited circumstances. *See First Nat. Bank in Fairmont v. Phillips,* 176 W.Va. 395, 344 S.E.2d 201 (1985). In that case, the court phrased the issue as follows: "may an equitably adopted child inherit as a brother or sister from another child of the equitably adoptive parent?" *Id.* 344 S.E.2d at 204. The court answered this question in the affirmative: an "equitably adopted child [may] inherit from another child of the adoptive parent." *Id.* at 205. The court, however, limited its holding to the facts of the case. Specifically, it stated that "[w]e leave to another day the more troublesome question of whether the equitably adopted child would inherit from collateral kindred of the adoptive parent(s)." *Id.* at 205 n. 6.

It is therefore clear that a majority of jurisdictions do not permit equitably adopted children to inherit from the kindred of their adoptive parents. Even the one jurisdiction that permitted an equitably adopted child to inherit *through* her adoptive parents, namely West Virginia, specifically limited the breadth of its holding. Moreover, in the area of equitable adoption, we have said that Maryland is "surely not prepared to go as far as West Virginia has gone." *McGarvey, supra,* 311 Md. at 240, 533 A.2d 690.

█ In the instant case, Paula seeks to inherit not from her putative mother, Marian Hutchison, but rather from Marian's sister. We agree with those cases that stand for the proposition that an equitably adopted child may not inherit *through* an equitably adoptive parent. Under both contractual and estoppel notions, the equities that clearly exist in favor of permitting an equitably adopted child to inherit from an equitably adoptive parent do not exist when that child seeks to inherit from a sibling of the child's adoptive parents. The governing law has been well summarized as follows:

> "The determinative factor, of course, is the relation of the child to the deceased in whose estate he seeks to participate. While he may recover against the estate of a defaulting promisor, the equities in his favor do not extend so far as to allow recovery against the estate of a foster parent's rela-

tive, one who has made no promise and—having done no wrong—has equities in his favor as well."

Note, *supra,* 58 Va.L.Rev. at 740.

Paula suggests that those cases which hold that an equitable adoptee may not inherit *through* an equitably adoptive parent are inapposite to the case at bar because in each of those cases, a legal heir of the decedent, as well as the equitably adopted child, claimed an interest in the estate, whereas in the instant case, only the Board of Education has filed a claim against the Estate of Eleanor Hamilton. Paula maintains that a party, who is not an heir, such as the Board of Education, can not defeat her claim to the Hamilton estate.

Paula's counsel conceded during oral argument before us that if an heir existed, Paula would have no interest in Eleanor's estate. Consequently, the crux of Paula's argument is that the doctrine of equitable adoption permits an equitably adopted child to inherit from the adoptive parent's sibling when the only other party seeking to inherit is the local Board of Education through the escheat laws.

This rationale was rejected by a federal district court in *In re Estate of McConnell,* 268 F.Supp. 346 (D.D.C.1967), *aff'd,* 393 F.2d 665 (D.C.Cir.1968). There, the federal district court, applying Florida law, was faced with the question of whether the natural children of the equitably adoptive parents could inherit from the equitable adoptee as "half-sisters" thereby defeating an escheat to the District of Columbia. The court held that no Florida or District of Columbia case "touching on equitable adoption is a precedent for a decree by this Court approving distribution of the estate of a deceased adoptee to the heirs of an adoptive parent who did not legally consummate the adoption." *Id.* at 349. Accordingly, the court found that the "half-sisters" had no interest in the estate and the estate escheated to the District of Columbia.

Although Paula correctly points out that escheats are not favored by law, *see e.g., United States v. 198.73 Acres of Land, More or Less,* 800 F.2d 434, 435 (4th Cir.1986); *In re Estate of Wallin,* 16 Ariz.App. 34, 490 P.2d 863, 864 (1971); *Estate of*

*Supeck,* 225 Cal.App.3d 360, 366, 274 Cal.Rptr. 706, 710 (1990); *State v. Public Service Electric & Gas Co.,* 119 N.J.Super. 264, 291 A.2d 32, 35 (1972); *Rippeth v. Connelly,* 60 Tenn.App. 430, 447 S.W.2d 380, 382 (1969), Maryland law is crystal clear that if no legal heir exists, the decedent's property escheats to the local Board of Education. *See* Maryland Code (1991 Repl.Vol., 1993 Cum.Supp.) § 3–105 of the Estates and Trust Article.[4] In the instant case, therefore, because Paula may not inherit from her equitably adoptive mother's sister, and Eleanor Hamilton died without heirs, her estate escheats to the Board of Education.

We therefore conclude that an equitably adopted child may not inherit from her adoptive parent's sibling. Consequently, the entry of summary judgment in favor of Paula was inappropriate in this case. Furthermore, the circuit court erred in denying the Board's motion to dismiss. Because Paula may not inherit from Eleanor's estate, it escheats to the Board of Education of Montgomery County.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO ENTER A DE-CLARATORY JUDGMENT NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.*

ELDRIDGE, J., dissents.

ELDRIDGE, Judge, dissenting:

The Court decides today that when the "aunt" of an equitably adopted child dies intestate, when the deceased had no "heirs" as defined by statute, and when the contest over the estate is between the equitably adopted child claiming through

---

**4.** Presently, § 3–105 also provides that if an individual was a recipient of long-term benefits under the Maryland Medical Assistance Program, the estate of that individual escheats to the Department of Health and Mental Hygiene. It is only if the individual was not receiving benefits under this program that the estate escheats to the local Board of Education.

her parent and the State claiming by escheat, the State should prevail. Neither the cases nor reason support this result.

"Equitable adoption" is a principle of equity law. The doctrine is typically applied when a "parent" has entered an arrangement to adopt a child that is not carried out according to the statutory requirements but when both have acted as if there were a parent-child relationship. *See McGarvey v. State*, 311 Md. 233, 236–238, 533 A.2d 690, 691–692 (1987). As the majority points out, the doctrine is rooted in the notion that it would be "inequitable and unjust to allow the parent to escape the obligations of an adoptive parent by failing to comply with the agreement." Consequently, for purposes of inheriting from the parent, courts will place the child "in the position he would have been in, had he been adopted." *McGarvey v. State, supra,* 311 Md. at 238, 533 A.2d at 692; *Besche v. Murphy,* 190 Md. 539, 549–550, 59 A.2d 499, 505 (1947). Maryland recognizes the doctrine of equitable adoption. *McGarvey v. State, supra,* 311 Md. at 238, 533 A.2d at 692.

Although this Court has not defined the contours of the doctrine, some other jurisdictions have refused to allow the equitably adopted child to inherit *through* the equitably adopting parents in a contest between the equitably adopted child and a legal heir of the decedent. *In re Estate of Olson,* 244 Minn. 449, 70 N.W.2d 107 (1955); *Menees v. Cowgill,* 359 Mo. 697, 223 S.W.2d 412 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950); *Pouncy v. Garner,* 626 S.W.2d 337 (Tex.Ct.App.1981).

In general, I agree that an equitably adopted child should not share in the intestate estate of a collateral "relative" at the expense of the legal heirs of that relative. The statutory laws of descent and distribution are a legislative attempt to divine how the decedent would have disposed of his or her property had there been a will. *Barron v. Janney,* 225 Md. 228, 234–235, 170 A.2d 176, 180 (1961). It is not unreasonable, absent a will, to speculate that a deceased would have preferred that his or her property devolve upon a legal heir rather than a person with whom the deceased had no adoption arrangement.

Not one case cited by the majority, however, involves a contest between the State and an equitably adopted child. The Court merely assumes that the same considerations which have defeated the claim of an equitably adopted child, in a contest with a legal heir, also apply in this case. This assumption, however, overlooks the State's unfavorable position in the intestate succession scheme. Because "society prefers to keep ... property within the family *as most broadly defined,* or within the hands of those whom the deceased has designated," escheat is disfavored and is enforced only as a last resort. *United States v. 198.73 Acres of Land, More or Less,* 800 F.2d 434, 435 (4th Cir.1986) (emphasis added). Since the law disfavors escheat, the equitably adopted child who has served as a dutiful family member should be entitled to the estate of her aunt. Furthermore, the factors that weighed against the equitably adopted child in a contest with an heir have no relevance here, for unlike those who would be entitled to take as heirs, the State has no "family" connection to the intestate decedent. It functions solely as a repository of last resort for the decedent's estate should there be no family members.

In deciding that Paula Browning is not entitled to the estate of Eleanor Hamilton, her "aunt," the majority relies on reasoning that is either inconsistent or circular. The majority asserts that "[a]lthough Paula correctly points out that escheats are not favored by law, ... Maryland law is crystal clear that if no *legal heirs* exist, the decedent's property escheats to the local board of education" (citations omitted) (emphasis added). If, by "legal heirs," the majority means the legal heirs as defined by statute, then the statement is inconsistent with the Court's view that one who is equitably adopted, even though not included among the statutory heirs, is permitted to inherit from an intestate equitably adopting parent. If, on the other hand, the majority means, by using the term "legal heir," simply a person who is entitled to inherit, then it has begged the question. The reason the parties are before this Court is for a determination of who is

legally entitled to inherit. Equitable adoption is one of the reasons which entitles a person to inherit. The result is that the Court has decided today, based on the most intellectually unsatisfying "reasons," to deprive Paula Browning of an inheritance.

The majority also ignores the fact that this is not simply a case where the relationship between Paula and Marian Hutchinson, the deceased's sister, is based entirely upon equitable adoption. In this case, Hutchinson had married Paula's biological father and, as a result, became her stepmother. According to Maryland Code (1991 Repl.Vol., 1993 Cum.Supp.), § 3–104(e) of the Estates and Trusts Article, based on this relationship, Paula would be a legal heir of Marian Hutchinson. To assume, in light of this, that the deceased, leaving no will, would have preferred her property to go to the State by escheat rather than to the legal heir of her sister compounds the inequity.

In effect, the Court has said today that when Eleanor Hamilton died intestate, she would have preferred to leave her estate to the government rather than to Paula Browning who, although never formally adopted, presumably because of oversight, was a member of the family for over seventy years. I do not believe that such a result would have been intended by the deceased.