800 F.2d 434
 UNITED STATES of America, Plaintiff,
v.
198.73 ACRES OF LAND, MORE OR LESS, IN LOUDOUN COUNTY,
VIRGINIA, et al., Defendants,
v.
COMMONWEALTH OF VIRGINIA, Appellee,
v.
The widow, widowers, HEIRS, devisees, and successors in
title OF FAIRFAX, George Wm., et al., Appellants.
UNITED STATES of America, Plaintiff,
v.
198.73 ACRES OF LAND, MORE OR LESS, IN LOUDOUN COUNTY,
VIRGINIA, et al., Defendants,
v.
COMMONWEALTH OF VIRGINIA, Appellant,
v.
The widow, widowers, HEIRS, devisees and successors in title
OF FAIRFAX, George Wm., et al., Appellees.
 Nos. 85-2332(L), 86-3801.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 14, 1986.
Decided Sept. 15, 1986.
 
 Frederick D. Greco (Edward F. Greco on brief) for appellant/cross appellee.
 Stephen C. Price, Escheator for Loudoun County (Perkins, Price & Zimmerman on brief) for appellee/cross appellant.
 Before HALL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 WILKINSON, Circuit Judge:
 
 
 1
 The Commonwealth of Virginia and the heirs of Ferdinando Fairfax claim competing interests in the proceeds of the condemnation by the United States of a piece of land in Loudoun County. The determination of entitlement turns on whether all or part of the property is subject to escheat. Under the Virginia law of escheats, Va.Code Sec. 55-168 to Sec. 55-201.1, the Commonwealth is entitled to property if there are no known heirs, or if the property appears to have been abandoned. There are known heirs to the property in question, and the Commonwealth is estopped from arguing that there has been abandonment by virtue of its previous position in this litigation. The Loudoun County land is therefore not subject to escheat. We remand the case to the district court for a determination of the existence of other heirs, and direct the court to distribute 100% of the proceeds from the condemnation to the known heirs and to those subsequently determined on remand.
 
 I.
 
 2
 In 1980, the United States filed an action to condemn a parcel of land in Loudoun County, Virginia for the purpose of improving the Appalachian Trail. The last person on record as owning the land was Ferdinando Fairfax, who had died testate in 1820. In 1981, the district court determined that $149,000 was just compensation for the property, and that sum was paid into the court. The Commonwealth of Virginia filed a third-party complaint in 1984, alleging that the land was subject to escheat because there were no persons competent to inherit the land and it had been abandoned. As third-party defendants, certain heirs of Ferdinando Fairfax (hereinafter "Fairfax heirs") filed an answer, alleging that there were persons entitled to the proceeds, and denying that the land had been abandoned.
 
 
 3
 The district court appointed a special master to inquire and report as to the present heirs, devisees, and successors in title to the property of Ferdinando Fairfax. The special master found that Ferdinando Fairfax' will directed his executors to sell a parcel of land that included the acres condemned. In fact, the land was never sold, either by Ferdinando, or by his executors or heirs. The special master reviewed the genealogy of the Fairfax family, and using the Virginia statute of descents, determined minimum shares to which the third-party defendants might be entitled. These minimum shares, added together, came to approximately 6% of the condemnation proceeds.
 
 
 4
 The district court directed the payment of 6% of the funds in the court registry to the Fairfax heirs and 94% to the Escheator for Loudoun County. The Fairfax heirs now appeal, and the Commonwealth cross-appeals.
 
 II.
 
 5
 The central question in this appeal is whether the property is subject to escheat. Because there are known heirs, and because the Commonwealth is estopped from arguing that there has been abandonment, we conclude that the property is not subject to escheat.
 
 
 6
 The law does not favor escheat. In re Estate of Holmlund, 232 Or. 49, 374 P.2d 393, 396 (1962); State v. United States Steel Corp., 12 N.J. 38, 95 A.2d 734, 738 (1953); In re Spinosa's Estate, 117 Cal.App.2d 364, 255 P.2d 843, 848 (1953). Rather, society prefers to keep real property within the family as most broadly defined, or within the hands of those whom the deceased has designated. Land escheats to the state only as a last resort, when no one else is qualified to own it. At common law, escheat occurred when the owner died intestate, "leaving no person capable of succeeding to the estate as his heir...." 2 R. Minor, The Law of Real Property Sec. 900 at 1151 (2d ed. Ribble 1928). In Virginia, as at common law, escheat occurs "wherever there is a total failure of a decedent's kindred by blood or by marriage...." Id. at 1152. See also Va.Code Sec. 55-168 et seq. Here there is no total failure of descent. It is not disputed that the third-party defendants in this suit are relatives of the long-deceased Ferdinando Fairfax.
 
 
 7
 The Commonwealth of Virginia has taken the position that the Fairfax heirs are entitled to 6% of the condemnation proceeds and the Commonwealth is entitled to the other 94%. This argument assumes that escheat can occur in piecemeal fashion, an assumption that is contrary to the principles of escheat at common law as well as to the statutory tendency to reduce the incidence of escheat by altering the statute of descents:
 
 
 8
 Our statutes go as far as possible to enable inheritable blood to be traced, and therefore property does not escheat to the state except where there is no qualified person to take or hold such property. The incapacity of the heirs first entitled to succeed to property will not effect an escheat, but the property will pass to the persons next entitled to take as though the first heirs had not existed.
 
 
 9
 State v. Kellihan (In re Tripp's Estate), 239 Iowa 1370, 35 N.W.2d 20, 20-21 (1948). See also 1 J. Lomax, Digest of the Laws Respecting Real Property 608 (1839). The special master found a dozen descendants of Ferdinando Fairfax, qualified to hold the property. Where there are such descendants, there is no need for an escheat.
 
 
 10
 Either there are other descendants of Ferdinando Fairfax who are alive, or there are not. If there are, and they come forward, they will be entitled to share in the proceeds. If there are no other descendants, the known Fairfax heirs will be entitled to all of the proceeds.
 
 
 11
 The property is not subject to escheat for want of heirs; we therefore proceed to the issue of abandonment. Before the district court, the Commonwealth of Virginia took the position that the Fairfax heirs were entitled to 6% of the condemnation proceeds and that the Commonwealth was entitled to the other 94%. Had the heirs abandoned the property, they would not have been entitled to receive any of the proceeds. One premise of the Commonwealth's position before the district court, therefore, must have been that the third-party defendants had not abandoned the property. The Commonwealth is now estopped from taking a view that is inconsistent with its previous position. "In certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation." Allen v. Zurich Insurance Co., 667 F.2d 1162, 1166 (4th Cir.1982). See also United Virginia Bank/Seaboard National v. B.F. Saul Real Estate Investment Trust, 641 F.2d 185, 190 (4th Cir.1981).
 
 
 12
 Litigants are barred from taking inconsistent positions in order to "protect the integrity of the courts and the judicial process." Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1177 (D.S.C.1975). Presumably counsel carefully considered its position below and concluded that it was an advantageous one. Indeed, in this case, the position prevailed. The Commonwealth cannot be permitted at this stage in the proceedings to alter its analysis of what justice requires. Litigants are forbidden to "play fast and loose" with the courts or "blow hot and cold." United Virginia Bank v. B.F. Saul, 641 F.2d at 190. The position that the Fairfax heirs should receive 6% of the condemnation proceeds is inconsistent with the theory that the heirs abandoned the property; the Commonwealth is therefore estopped from arguing the issue of abandonment on remand.
 
 III.
 
 13
 The district court properly rejected the Commonwealth's argument that the statute of distribution rather than the statute of descents was the appropriate law to use in determining the heirs of Ferdinando Fairfax. Although Ferdinando Fairfax directed his executors to sell the property and divide the proceeds among his heirs, the land was never sold. The Commonwealth contends that "equity will treat that which is directed to be done as already done, and treat the land, for purposes of devolution and the transfer of title, as already converted into personal estate." Carney v. Kain, 40 W.Va. 758, 799, 23 S.E. 650, 652 (1895).
 
 
 14
 However, when the conversion was intended for a particular purpose, and the purpose fails, "equity regards the owner as not having directed a conversion." Pratt v. Taliaferro, 30 Va. (3 Leigh) 679, 681 (1832). See also Moore v. Kernachan, 133 Va. 206, 112 S.E. 632, 635 (1922). The purpose of dividing the proceeds from the sale of real estate among the immediate Fairfax heirs was never carried out. We therefore affirm the conclusion of the district court that under Virginia law, there was no equitable conversion and that the land retained its character as real property.
 
 
 15
 We remand this case to the district court for a determination of whether any other descendants of Ferdinando Fairfax can be found, and for a determination of the relative shares to which all the heirs are entitled.
 
 
 16
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.