## CIRCUIT COURT OF THE CITY OF ROANOKE

In re Escheat of Lots
Described as Eastland Developers, Inc.,
Mary Linda Ave. NE,
Lynchburg Turnpike,
Tax Nos. 7200101, 7200102X,
and 7200103X

September 30, 1994

Case No. CH93000329(R)

BY JUDGE CLIFFORD R. WECKSTEIN

On July 5, 1989, a jury empaneled by the escheator of the City of Roanoke returned a verdict escheating real estate, including the three parcels of land (hereafter referred to as "the property" or "the Eastland property") which are the subject of this suit. On April 28, 1993, after he discovered that the property contained a toxic waste site, the escheator filed a petition to correct the verdict of escheat and remove the property from the verdict. Eastland Developers, Inc., which owned the property at the time of the inquest, demurred to this petition.

An oral argument was conducted, at which the escheator was represented by counsel; the Commonwealth was represented by counsel, an Assistant Attorney General; and Eastland was represented by counsel. At oral argument, the parties, through their attorneys, agreed that Eastland's demurrer would be considered as a motion for summary judgment, and that both the Commonwealth and the escheator likewise moved for summary judgment; that I will consider documents filed by Eastland with its pleadings and other documents submitted by counsel at oral argument; that, through their written submissions and oral arguments, counsel have given me everything necessary to decide this case on motions for summary judgment; and that there are no material facts in dispute.

The Attorney General and the escheator each argue (though for different reasons) that the property can be removed from the verdict of escheat. Eastland contends that no legal basis exists to do so.

### Abandonment as Basis for Escheat

The Attorney General contends that "[a]bsent a failure of title, there is no ground for escheat"; that "[i]n the present case there is not and was not in 1989 a failure of title"; and that mere abandonment cannot constitute a basis for an escheat and an escheat verdict. Therefore, he argues, the proceedings were flawed from the outset; the verdict must be corrected because the property could not have been escheated. I do not agree.

"Every sovereign state has power to take charge of apparently abandoned or unclaimed property . . . . [M]ost states have enacted legislation more or less comprehensive in scope providing in effect for the escheat of abandoned or unclaimed property or giving the state custody of such property with or without ultimate escheat." 1 Am. Jur. 2d, *Abandoned, Lost, Etc., Property*, § 6. "The right of appropriation by the state of abandoned property has existed for centuries in the common law." *Connecticut Ins. Co. v. Moore*, 333 U.S. 541, *reh'g denied*, 334 U.S. 810 (1948) (dealing with insurance policies). "The right and power so to legislate [for escheat to the state of abandoned property] is undoubted." *Provident Savings Institution v. Malone*, 221 U.S. 660, 664 (1911) (dealing with savings bank deposits).

Has the General Assembly so legislated? It has.

Chapter 10 of Title 8.01 (Code §§ 55-168 through 55-201.1) sets forth the statutory scheme for escheat. Within that Chapter, the General Assembly has provided, in § 55-171, that each treasurer annually must furnish to the escheator "a list of all lands within his district (i) of which any person shall have died seised of an estate of inheritance and without any known heir, (ii) to which no person is known by the treasurer to be entitled, or (iii) which appear to have been abandoned."

On receiving this list, or upon receiving other information, in writing and under oath "that any of the conditions described in § 55-171 exists, the escheator shall proceed to hold his inquest to determine whether any land mentioned has escheated to the Commonwealth." Code § 55-172. After giving notice, the escheator must summon a jury which, *inter alia*, "shall consider evidence of abandonment as defined in § 55-170.1." Code § 55-173.

When the inquest is ended and the verdict appropriately signed, it is recorded among the land records in the Circuit Court Clerk's Office. Code § 55-175. Thereafter, the escheator may sell the land for cash, and the State Treasurer "shall have a grant issued and executed for the lands so sold." Code § 55-186. Anyone who claims an interest in the land listed on the verdict may, before sale, petition the circuit court for redress. Code § 55-176.

The only rational reading of Code §§ 55-171 and 55-172, within the statutory scheme of which these statutes are a part, is that abandonment, in and of itself, constitutes a basis for escheat. Nothing in the statute indicates (as the Attorney General contends) that abandonment is merely evidence of failure of title and that failure of title is the only "real" ground for escheat.[1]

Adoption of the Attorney General's argument would require construction of unambiguous legislation and require a construction which would render subsection (iii) of § 55-171 effectively meaningless. "[N]o part of an act should be treated as meaningless unless absolutely necessary." *Garrison v. First Federal Savings and Loan*, 241 Va. 335, 340, 402 S.E.2d 25 (1991) (citation omitted).

The Attorney General relies principally on *Sands v. Lynham*, 69 Va. (27 Gratt.) 291 (1876), to support the argument that failure of title is necessary and abandonment insufficient for escheat to take place.[2] This reliance is misplaced. *Sands* was, in fact, a case in which there was a failure of title. In *Sands*, the Supreme Court of Appeals found that, upon the death of one Haunstein without heirs, title to his property vested immediately in the state, *Id.* at 296-298. While "an inquest of office might be expedient," *Id.* at 298, as "the means by which the state furnishes authentic record evidence of her title," *Id.*, "the title must vest immediately in the state without office found." *Id.* The Court did not have to consider and did not

---

[1] The Attorney General contends that, at common law, only failure of title constituted a basis for escheat; that abandonment, in and of itself, was not a basis for the escheat of lands. If this assertion is correct, *but see Connecticut Insurance Co. v. Moore, supra*, then the General Assembly has altered the common law rule. *See* Virginia Code § 1-10; *also see* footnote 3, *infra*.

[2] Counsel agree that *Sands* is, for all practical purposes, the latest pronouncement of Virginia's highest court on the question of escheat of real properties.

consider whether abandonment (or *any* ground other than failure of title) furnished an independent basis for escheat.[3]

The Attorney General also relies upon the statement in *Thompson on Real Property*, § 2515, p. 491 (Repl. Vol. 1979), that "it is the general rule today that no title to corporeal real property can be lost or destroyed by any act of abandonment on the part of the owner." This is correct, as far as it goes: "An abandonment . . . so far as it relates to a vested estate in real property is ineffectual to transfer the title." *Id.*, p. 492 (same paragraph). It is not the act of abandonment, however, which transfers the title. The abandonment furnishes the basis for the property to be listed for the escheator; the verdict of escheat causes title to be lost, causes transfer of title. As *Thompson* says (still later in the same paragraph cited by the Attorney General), "Once title vests it stays vested until it passes by grant, descent, adverse possession, *or some operation of law such as escheat* or forfeiture." *Id.*, pp. 492-93 (emphasis added).

Virginia's escheat statutes were considered by the United States Court of Appeals for the Fourth Circuit in *United States v. 198.73 Acres of Land*, 800 F.2d 434 (4th Cir. 1986), a case in which "The Commonwealth of Virginia and the heirs of Ferdinando Fairfax claim[ed] competing interests in the proceeds of the condemnation by the United States of a piece of land in Loudoun County." *Id.* at 435. The court said that:

> Under the Virginia law of escheats, Va. Code § 55-168 to § 55-201.1, the Commonwealth is entitled to property if there are no known heirs, or if the property appears to have been abandoned.

*Id.* I agree with the Fourth Circuit. The Attorney General's construction of the escheat statutes is strained and unnatural. The position taken by the escheator, by Eastland, and by the United States Court of Appeals, flows naturally from the language of the statutory scheme.

---

[3] As implied above, I am less satisfied than is the Attorney General about the answer to the question of whether abandonment, at common law, was a basis for escheat of realty. I do not perceive, that, to answer the questions raised by this case, further inquiry into the common law is necessary. *See Standard Oil Co. v. New Jersey*, 341 U.S. 428, 435, n. 5 (1951); *Cunnius v. Reading Sch. Dist.*, 198 U.S. 458 (1905) (discussion of common law and civil law).

*Removal of Property From the Escheat Verdict*

Eastland argues that, once the escheator has properly acquired title to property through an escheat verdict, he cannot "change his mind," removing from the verdict property that he has determined should not have been escheated. I do not agree.

Code § 55-182.1 provides that:

> If the escheator finds that the escheat of a parcel was improper, for whatever reason, he shall remove the parcel from the certificate at any time prior to sale pursuant to § 55-184.1. The escheator shall state in writing his reasons for such removal to the satisfaction of the State Treasurer. Thereafter [unless there are proceedings to claim the land escheated], the escheator shall petition the circuit court to correct the verdict . . . .[4]

The word "improper" has not been defined by the General Assembly. It is a word of common meaning, generally understood. "The general rule is that '[n]on-technical words in statutes are taken to have been used in their ordinary sense and acceptation'." *Gomes v. City of Richmond*, 220 Va. 449, 452, 258 Va. 582 (1979).

The first definition listed for "improper" in *The American Heritage Dictionary* is "[n]ot suited to circumstances or needs; unsuitable." Among the definitions of "improper" given in *Webster's Third New International Dictionary* is "not suited to the circumstances, design, or end." Approximately three decades ago, our Supreme Court quoted the definition of "improper" appearing in the second edition of *Webster's New International Dictionary*: "Not proper; not suited to the circumstances, design or end; not appropriate, fit or congruous . . . . not accordant with propriety or good taste or manners . . . ." *Booth v. Commonwealth*, 197 Va. 177, 179, 88 S.E.2d 916 (1955).

---

[4] Given the posture of this case — and the fact that all parties have moved for summary judgment on the grounds that they outlined in their memoranda and oral arguments — I assume, for the purpose of the present litigation, that the satisfaction of the State Treasurer about the statement of reasons for removal is not in issue. I am entitled to assume, from the posture of the Attorney General, who represents the State Treasurer, that the Treasurer is more than satisfied to have the property removed from the rolls of property escheated to the state.

Clearly, by the use of the modifying phrase, "for whatever reason," the General Assembly has vested the escheator with considerable discretion to conclude that inclusion of property in an escheat verdict was "improper."

The escheator assigns a reason for removal of the Eastland property from the list of properties escheated to the state, "*i.e.*, that the property is a toxic waste dump." Use of this property "for any purpose was prohibited by City, State and Federal law" (as the affidavit Eastland filed in this case states), because the property is a repository of hazardous waste. In 1982, Eastland had entered into a "consent agreement and consent order" with the United States Environmental Protection Agency so finding. Apparently, the closure and cleanup activities required by that order have never been completed.

I do not believe that reasonable persons can disagree about the proposition that an escheator reasonably could conclude that such property is "not suited to circumstances or needs" of the escheator or of the sovereign in whose shoes he stands; that it is not effectively or conveniently salable within the ambit of an escheator's powers; that it is "unsuitable," both for the escheator to try to market and for the state to own. Therefore, I conclude that the escheator properly exercised his discretion in finding that the escheat of the Eastland property was "improper, for whatever reason."

The escheator suggests that public policy favors his position, and I agree. As Justice Powell wrote, in a decision concerning powers of bankruptcy trustees, Congress has repeatedly emphasized its:

> "goal of protecting the environment against toxic pollution." *Chemical Manufacturers Assn., Inc. v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 143 (1985). Congress has enacted a Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901—6987, to regulate the treatment, storage, and disposal of hazardous wastes by monitoring wastes from their creation until after their permanent disposal. That Act authorizes the United States to seek judicial or administrative restraint of activities involving hazardous wastes that "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6973; see also S. Rep. No. 98-284, p. 58 (1983) . . . .
>
> In the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by Pub. L. 98-80, § 2(c)(2)(B), Congress established a fund to finance cleanup of some sites and required certain responsible parties to reimburse

either the fund or the parties who paid for the cleanup. The Act also empowered the Federal Government to secure such relief as may be necessary to avert "imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance." 42 U.S.C. § 9606.

*Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 505-06 (1986). In a plethora of statutes, Virginia's General Assembly, has demonstrated similar concerns, and an identical goal of environmental protection. "In the face of [such] undisputed concern over the risks of the improper storage and disposal of hazardous and toxic substances," *Id.*, I am unwilling to find that the escheator abused his discretion when he concluded that the escheat of a toxic waste dump was "improper, for whatever reason"; I will not find that escheat was *not* "improper, for whatever reason."

Eastland suggests (in a letter from counsel to the Court, dated August 3, 1994) that, inasmuch as toxic pollution had rendered the property unusable under the law, it was free to abandon the property, to cease paying taxes upon it, and to — in effect — wait for the property to escheat to the Commonwealth. The short answer to this suggestion is that "[t]he normal freedom of the owner to dispose of his property as he sees fit should not be curtailed unless the disposition violates some rule of law or is against public policy." *Womble v. Gunter*, 198 Va. 522, 532, 95 S.E.2d 213 (1956). An attempt to abandon a toxic waste dump in such a manner would, indeed, violate public policy.

The major thrust of Eastland's argument is simply a thinly-disguised effort to suggest that the Commonwealth should be estopped from returning the property to Eastland. Eastland argues that, once the escheator made his decision to proceed against the property, and once the escheat verdict was returned, and (implicitly) once Eastland's position was changed by recordation of the verdict, the escheator is barred from undoing what he had done. "[O]nce an escheat is perfected," Eastland asserts, "it is unassailable even by the Commonwealth." Not only does this argument ignore the escheator's discretion to remove from the escheat list "for whatever reason" improperly escheated property, but it ignores the rule, clearly established in Virginia, that the defense of estoppel does not apply to the state when acting, as here, in a governmental capacity. *Westminster-Canterbury of Hampton Roads v. City of Virginia Beach*, 238 Va. 493, 502-03, 385 S.E.2d 561 (1989). "This function," the escheat of abandoned

properties to the state, "clearly is governmental in nature, and it may not be thwarted by application of the doctrine of estoppel." *Id.* When Eastland suggests that the escheator's failure to inspect the property before the verdict bars him from later removing the property from the verdict, it simply is arguing estoppel in a different way. (I also agree with what another circuit judge wrote in a different context: "To require [a]n inspection of every piece of property subject to escheat would not only be unreasonable and burdensome, but in most instances would not prove fruitful." *Scruggs v. Harris*, 10 Va. Cir. 162 (1987) (Circuit Court of Henrico County, Kulp, J.)).

Finally, Eastland refers to Code § 55-182.2 and to 42 U.S.C. § 9601(35)(A)(ii). The Virginia statute, enacted in 1991 with an effective date of April 3, 1991, provides that, "[i]n addition to any other remedy provided by law," the Commonwealth shall have recourse against any prior owner "for the costs of clean-up of escheated property in or upon which any hazardous material . . . is found." The federal enactment relieves states of federal responsibility for clean-up of lands obtained through escheat.

Counsel for the escheator asserted, in oral argument, that Code § 55-182.2 was adopted as a reaction to the escheat verdict at bar, and was declarative of existing law; counsel for Eastland concurred.

Eastland seems to suggest that, inasmuch as Congress and the General Assembly have enacted statutes for cost-shifting when escheated lands contain environmental hazards, I should ignore the existence of these hazards in determining whether the escheator properly could decide to remove the property from the escheat list. I disagree. Granting that the existence of these statutes might inform an escheator's discretion in making *his* decision about whether to act to remove property from the escheat rolls, I do not believe that these laws have impact on *the trial judge's* decision about whether the escheator properly could remove the Eastland property from the verdict.

### Conclusion

For the foregoing reasons, I find:

(a) That abandonment is a proper basis for escheat; and

(b) That subsequent to the escheat verdict concerning the abandoned Eastland property, the escheator properly concluded that the escheat of the property was improper, and that the property should be removed from the verdict; and

(c) That the Eastland property should be removed from the verdict, and the verdict vacated as to the property.

A decree will be entered, incorporating this opinion, modifying the verdict of escheat entered on July 5, 1989, and providing that the property shown in the verdict in the name of Eastland Developers, Inc., Mary Linda Ave., NE, Lynchburg Turnpike, Tax No. 7200101, Tax No. 7200102X, and Tax No. 7200103X, be stricken from the verdict, and that the verdict is vacated only as to such property.