**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 6, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT M. LANE,

    Plaintiff - Appellant,

v.

LUCAS E. BUCKLEY; HATHAWAY
AND KUNZ PC; SCOTT W. MEIER,
CPA; DFWU LLC; DRAY, DYEKMAN
REED AND HEALEY PC; GREGORY C.
DYEKMAN; COLLEEN LANE;
MATTHEW W. LANE; PATRICIA E.
LANE,

    Defendants - Appellees.

No. 17-8079
(D.C. No. 2:15-CV-00155-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY** and **MATHESON**, Circuit Judges.
_____

Robert M. Lane appeals the district court's entry of summary judgment in

favor of Patricia E. Lane on claims for rescission and restitution, fraudulent transfers,

and breach of contract. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Before turning to the facts of this case, we first review those portions of Lane's divorce and bankruptcy proceedings that provide necessary context for this appeal.

### A. Divorce and bankruptcy proceedings

In 2006, Lane and his then-wife Vikki Lane began divorce proceedings. In March 2009, a California state court (Divorce Court) entered a final judgment of dissolution that required Lane to pay Vikki a $250,000 settlement and $6,000 per month in child support. In November 2009, Lane's sister and the appellee here, Patricia E. Lane (Patricia), helped Lane create DFWU, LLC. Patricia was one of DFWU's two initial managers (the other was their mother), and DFWU's primary "owners and unitholders" were the "Penobscot Enterprises Inc. Defined Pension Trust" (Penobscot Pension) and the "Robert M. Lane IRA." Aplt. App., Vol. 1 at A109.

In April 2010, DFWU opened a bank account at the Bank of Jackson Hole (Bank). On May 3, 2010, Lane directed a Bank employee, Brian Jones, to transfer all of Lane's securities and all but $250 in cash from Lane's IRA account to DFWU's account. In May 2010, the Divorce Court entered a Qualified Domestic Relations Order for $151,354 in past-due child support against Lane's retirement assets in Penobscot Pension. Two days later, Lane sent an email to his brother Timothy Lane, who apparently was Penobscot Pension's trustee, and to Jones at the Bank, thanking

2

them for advising that they were transferring all but $1.00 from Penobscot Pension to DFWU.

At some point, a loan agreement between DFWU and Patricia was created; the agreement is dated June 23, 2010, but when it was executed is unclear. The agreement provides that Patricia could borrow up to $5 million from DFWU and her sole obligation is to pay the loan in full (principal plus interest) on the maturity date in 2040. The loan agreement is signed "Patricia E. Lane" in three capacities: as the borrower, as the manager of DFWU, and as the manager of another entity tied to Lane's retirements assets, Windriver Corp. of Wyoming, LLC (Windriver), which had agreed to guarantee and secure the loan. *Id.* at A247.

In April 2011, Lane filed a voluntary petition for Chapter 7 bankruptcy and received a discharge in August 2011. Between August and October 2012, DFWU transferred $2,029,682.42 to Patricia, ostensibly pursuant to the loan agreement. In December 2012, Patricia wrote a $1.8 million check to J.R. Harlan, LLC, from a Wells Fargo account held jointly with her mother. Patricia would later testify that she set up J.R. Harlan at Lane's request and to shelter assets from his ex-wife, and that the $1.8 million came from the money DFWU had transferred to her. Lane tried to cash the check a year later, but by that time Patricia had moved the funds to another account, and the check was rejected.

Meanwhile, in December 2012, the bankruptcy trustee filed an adversary proceeding against Patricia, DFWU, Penobscot Pension, and Lane's mother to obtain funds transferred to them. The trustee alleged that DFWU and Penobscot Pension

3

were part of a scheme Lane devised to shelter assets from creditors. In early 2013, the parties to the adversary proceeding, along with other family members who managed other trusts and Windriver, all with allegedly similar purposes, settled with the trustee by agreeing to turn over virtually all of Lane's assets possessed by DFWU, the other trusts, and Windriver (Turnover Agreement).

Lane objected to the Turnover Agreement, contending that the property to be turned over was not property of the bankruptcy estate. In settling that dispute, Lane withdrew his objections to the Turnover Agreement, and the trustee agreed that up to $2.5 million in Penobscot Pension and Lane's IRA, certain collectibles, and other tangible property would be excluded from the bankruptcy estate and therefore would not be turned over to the trustee but instead turned over to Lane.

Lane expected the trustee to provide the $2.5 million from the bankruptcy estate, but the trustee refused, arguing that the approximately $2 million DFWU loaned to Patricia was part of the retirements funds Lane was permitted to keep. Lane asked the bankruptcy court to compel the trustee to provide him with the $2.5 million from the bankruptcy estate. He argued that the funds transferred to DFWU were not part of the estate; twice attested to the validity of the loan in the bankruptcy court, once at a hearing and once in a sworn declaration; and presented an expert witness to testify that the loan was valid and that DFWU's valuation should be decreased due to the unlikelihood that the loan would be repaid.

The bankruptcy court found credible Patricia's testimony that Lane controlled or transferred funds into DFWU's account or instructed her in handling the funds,

4

that Lane directed the transfer of funds from DFWU to Patricia's Wells Fargo joint account, and that Patricia then used the funds to buy a car for Lane, pay expenses Lane incurred on Patricia's credit card, and send him increments of $1,000 to $3,000 in cash at his request. The court also "accepted" the expert's testimony on the value of the loan but found it would be inequitable to discount the value of the pension assets because of Lane's acts of "nondisclosure and subterfuge." Aplt. App., Vol. 2 at A359–60. The court described those acts: upon filing his bankruptcy petition and schedules, Lane failed to properly disclose the $2,029,682.42 transferred to DFWU; he transferred the funds himself or through Patricia; the funds were for his own benefit and use; and he later produced the loan agreement transferring those assets to Patricia's personal control. *Id.* at A360. The court further found that the bankruptcy estate did not owe Lane any further amounts regarding the $2.5 million in pension assets because Lane and the trustee had agreed to pay Lane the balance in gold and silver coins, which Lane chose to use to purchase artwork.

In 2017, Lane pled guilty to one count of Falsification of Records in a Bankruptcy Proceeding and was sentenced to an 18-month term of imprisonment.

## B. The instant action

About five months after the bankruptcy court denied Lane's request to compel the bankruptcy trustee to turn over the $2.5 million in pension assets, Lane filed an amended complaint in Arizona state court against Patricia, DFWU, his brother Matthew Lane, his sister-in-law Colleen Lane, and various attorneys and law firms involved in Lane's bankruptcy case. But this appeal concerns only three of his

5

claims against Patricia in which he alleged that as DFWU's manager, Patricia had loaned herself approximately $2.2 million from DFWU that was part of the pension assets the bankruptcy court had allowed him to retain possession of. He further alleged that the loan transaction was a breach of Patricia's fiduciary duties, violated DFWU's operating agreement and various pension and IRA agreements, and was a fraudulent transfer that should be rescinded because it violated Arizona law and the Internal Revenue Code. He asserted that Patricia had refused his demand that she repay the amount owed under the loan agreement, and that refusal constituted breach of the loan agreement of which he was the intended third-party beneficiary. Lane sought rescission of the loan, return of the loan proceeds plus interest (then calculated to be $2.7 million), and injunctive relief.

Defendants removed the case to the United States District Court for the District of Arizona, where Lane filed a motion for an emergency preliminary injunction. The case was then transferred to the United States District Court for the District of Wyoming, which denied that motion, and we affirmed, *see Lane v. Buckley*, 643 F. App'x 686, 687 (10th Cir. 2016). As the case went on, Lane stipulated to the dismissal of two claims and voluntarily dismissed three others, and the district court granted motions to dismiss various other claims and defendants. This left three claims against Patricia: claim VII, rescission and restitution; claim VIII, fraudulent transfers; and claim IX, breach of contract enforced by a third-party

6

beneficiary.  Patricia moved for summary judgment on those claims, which the

district court granted.  Lane appeals.[1]

## DISCUSSION

We review an order granting "summary judgment de novo, applying the same

standards that the district court should have applied." *Fields v. City of Tulsa*,

753 F.3d 1000, 1008 (10th Cir. 2014) (internal quotation marks omitted).  A "court

shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "[W]e examine the record and all reasonable inferences that

might be drawn from it in the light most favorable to the nonmoving party." *Fields*,

753 F.3d at 1009 (internal quotation marks omitted).

### A.  Claims VII and VIII

Patricia argued that Lane was "estopped" from challenging the validity of the

loan to Patricia.  Aplt. App., Vol. 3 at A694.  The district court concluded that Lane

was estopped and that claims VII and VIII, in which he asserted the loan to Patricia

was invalid, could be dismissed based solely on Lane's position before the

---

[1] In his notice of appeal, Lane identified the final judgment and four specific orders that (1) denied his motion for leave to amend his complaint; (2) granted defendants Matthew and Colleen Lane's motion to dismiss them from the case and to dismiss claim VI; (3) granted a motion to dismiss claims VII and VIII against defendants Hathaway and Kunz PC, Scott Meier, and Lucas Buckley; and (4) granted summary judgment to Patricia on claims VII, VIII, and IX.  But in his appellate brief, Lane challenges only the grant of summary judgment to Patricia.  He has therefore waived our consideration of all the district court's other rulings. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (explaining that issue not raised in opening brief is waived).

7

bankruptcy court that the loan was valid.  In support, the court relied on a statement in a prior appeal Lane took from a bankruptcy court order that "'[l]itigants are barred from adopting views that are inconsistent with their previous positions in the same or related litigation.'"  *Id.* at A695 (quoting *Lane v. Barney (In re Lane)*, No. 15-CV-114-J, 2015 WL 12915111, at *1 (D. Wyo. Aug. 13, 2015), *citing United States v. 198.73 Acres of Land, More or Less*, 800 F.2d 434, 436 (4th Cir. 1986)).

Lane has not meaningfully challenged the district court's estoppel ruling.[2] Although he acknowledges it, he then argues that the district court erroneously excluded evidence that Patricia repudiated the loan in 2013.  *See* Aplt. Opening Br. at 16–17.  But he has not explained, nor do we see, how any alleged error in excluding evidence of repudiation affects the estoppel ruling.  Lane has therefore waived our review of the estoppel ruling.  *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal.").  Accordingly, we affirm the district court's entry of summary judgment on claims VII and VIII.  To the extent Lane contends there are disputed issues of material fact precluding summary judgment on those claims,[3] or that the

---

[2] Similarly, in the district court, Lane did not address Patricia's estoppel argument.

[3] The alleged disputes include (1) the date the loan agreement was signed; (2) whether Patricia was DFWU's manager or a DFWU fiduciary when she signed the loan agreement on its behalf or when funds were transferred from DFWU to her own account; and (3) whether Patricia directed or had a role in the purchase and sale of shares of money within DFWU and Penobscot Pension.

district court prematurely determined that Wyoming's version of the Uniform Fraudulent Transfer Act applied to claim VIII instead of Arizona's version, his arguments pertain only to the district court's alternative merits analysis of those claims. Because we affirm the district court's unchallenged estoppel rationale, we need not reach those contentions. *See Murrell v. Shalala*, 43 F.3d 1388, 1389–90 (10th Cir. 1994) (affirming on basis of unchallenged alternative disposition).

## B. Claim IX

The district court ruled that summary judgment was proper on claim IX for breach of contract enforced by a third-party beneficiary. The court reasoned that because the loan agreement required only that Patricia repay the full principal amount plus accrued interest in 2040, her refusal of Lane's demand for immediate repayment breached none of the agreement's terms. The court ruled that communications from Patricia's attorney to Lane, which Lane said were evidence that Patricia had anticipatorily repudiated the loan agreement, were inadmissible under Federal Rule of Evidence 408 because they were made in the course of settlement negotiations. In relevant part, Rule 408 provides that "[e]vidence of the following is not admissible— on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: . . . conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408(a)(2).

Although the district court analyzed and rejected other arguments Lane made regarding claim IX, Lane challenges only the district court's ruling that Rule 408

9

prohibited consideration of statements in emails Patricia's attorney had written to Lane. Although there were three such emails, only one is at issue in this appeal. It is titled "Lane matters – Subject to Rule 408(2)." Aplt. App., Vol. 3 at A612. In relevant part, Patricia's attorney stated: "I question the validity of your assertion that these are borrowed funds. In fact, this appears to be a gift like so many people made in the last half of 2012 to avoid the anticipated decrease in the federal unified credit." *Id.* The district court excluded these statements under Rule 408 because they were made as part of settlement negotiations.

Although Rule 408 has certain exceptions, Lane does not argue that any of them apply here; he contends only that "[t]he district court should have redacted the language referencing settlement negotiations and admitted the substantive portions of the documents which form the basis of [Patricia's] repudiation." Aplt. Opening Br. at 16–17. None of the three cases he cites in support of this argument, however, persuades us that the district court erred.

In the first case, the issue was whether the trial court erred in admitting a document that had the following statement redacted: "Please review and advise with respect to settlement of the claim." *Wingert & Assocs., Inc. v. Paramount Apparel Int'l, Inc.*, No. CIV 03–6451 ADM/AJB, 2005 WL 2847323, at *3 (D. Minn. Oct. 31, 2005) (unpublished). The court held that even with the redacted language, it was "not clear" that the letter "constituted any sort of settlement negotiation," and without the redacted language, "nothing . . . indicate[d] any admission of fault." *Id.* The email here clearly indicated it was part of a settlement negotiation, and the

10

statements at issue, which contest Lane's view of the loan agreement, are clearly central to that negotiation. The second case, *King v. University Healthcare System, L.C.*, No. CIV A 08–1060, 2009 WL 2222698 (E.D. La. July 24, 2009) (unpublished), contains no reference to Rule 408 or settlement negotiations. And in the third case, the court held that although Rule 408 required redaction of "any offers of compromise," it did not bar production of other information contained in claims made to a bankruptcy trust that were more akin to a complaint than an offer of settlement or compromise. *Shepherd v. Pneumo-Abex, LLC*, No. 09-91428, 2010 WL 3431633, at *2 (E.D. Pa. Aug. 30, 2010) (unpublished). This case is distinguishable because the statements here are clearly part of, and integral to, an offer of settlement or compromise. We therefore see no error in the district court's refusal to consider them on summary judgment. *See Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995) (explaining that at summary judgment, "the content or substance of the evidence must be admissible").

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

11