**VIRGINIA SPRINKLER COMPANY, INC., Plaintiff–Appellant,**

**and**

**Virginia Pipe & Supply Co., Plaintiff,**

**v.**

**ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, U.A., AFL–CIO, Defendant–Appellee.**

No. 88–3121.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1989.

Decided Feb. 22, 1989.

---

Alexander Neal Barkus (Paul E. Miren-
goff, David H. Battaglia, Hunton &
Williams, Washington, D.C., on brief), for
plaintiff-appellant.

William Walter Osborne, Jr. (Kathleen A.
Murray, Beins, Axelrod & Osborne, P.C.,
Washington, D.C., on brief), for defendant-
appellee.

Before PHILLIPS, MURNAGHAN,
and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge.

Here we must decide whether the district
court properly ordered arbitration of a dis-
pute between a company and a labor union.
The appellant, Virginia Sprinkler Company,

Inc. ("Virginia Sprinkler" or "the company") filed an action in the United States District Court for the Eastern District of Virginia against the Road Sprinkler Fitters Local Union No. 669, U.A., AFL–CIO ("the Union") seeking a declaration that the company was not required to arbitrate the grievance filed by the Union over alleged violations of its collective bargaining agreement with Virginia Sprinkler. The appellant argued that arbitration was improper because Article 3, the contract provision on which the Union based its grievance, was illegal and unenforceable. Article 3 contained an arbitration provision. The Union counterclaimed for an order compelling arbitration.

The district court granted the Union's motions for summary judgment on both Virginia Sprinkler's declaratory action and the Union's counterclaim.

## I.

At issue here is Article 3 of the collective bargaining agreement between the Union and Virginia Sprinkler. That Article, in part, deals with the practice of "doublebreasting," whereby the same owner splits its employees between two companies, one that is party to a labor agreement and a second one that is non-union.[1] Understandably, a union fears that doublebreasting will harm its membership by allowing a unionized company to farm out work to non-union workers. Article 3 provides some protection from such a practice. In pertinent part, the Article provides that:

If and when the Employer shall perform any work of the type covered by this Agreement as a single or joint Employer ... within the trade and territorial jurisdiction of Local 669, under its own name or under the name of another ... the wage and fringe benefit terms and conditions of this Agreement shall be applicable to all such work performed on or after the effective date of this Agreement. The foregoing shall not be interpreted to apply to separate Employer

situations. It is not intended that this Article be the exclusive source of rights or remedies which the parties may have under State or Federal laws.

At the very end of Article 3 appears an arbitration provision:

Particular disputes arising under the foregoing paragraphs shall be heard by one of three persons to be selected by the parties (alternatively depending upon their availability) as a special arbitrator.

The dispute here arose out of the relationship between Virginia Sprinkler and Virginia Pipe & Supply Company, Inc. ("Virginia Pipe"). The principal owner of Virginia Sprinkler also was the principal owner of Virginia Pipe. In September 1987, the Union asserted a grievance based on an alleged violation of Article 3. The Union asserted that the two companies had been operated as a single or joint employer within the meaning of Article 3 and that, therefore, the wage and fringe benefit provisions of the Article "should have been applied to all persons employed" by either company.

In response to the Union's grievance, Virginia Sprinkler filed the declaratory judgment action that gave rise to the appeal presented here.

## II.

We must resolve two issues here: (1) whether the district court applied the correct standard in deciding whether Virginia Sprinkler must submit to arbitration; and (2) whether Article 3 was facially invalid.

### A. *Standard for Judging Arbitrability*

Arbitration was appropriate unless Article 3 was invalid on its face. In deciding whether to order arbitration, the district court adopted the test devised by the Ninth Circuit:

When a party seeks to avoid arbitration on the ground that a contract clause is illegal, a district court may grant relief if the contract clause "*on its face* violates

---

1. For a general description of doublebreasting, *see Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1275–76 (9th Cir.1984), *cert. de-* *nied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985).

federal labor law or is contrary to federal labor policy." ... We "need only decide whether an arbitrator could interpret the disputed contract clause in a manner that would render it lawful. Only if all possible interpretations of the contract provision would result in a conflict [with federal labor law] would arbitration be precluded."

*R.B. Electric, Inc. v. Local 569, International Brotherhood of Electrical Workers,* 781 F.2d 1440, 1442 (9th Cir.1986) (emphasis in original, citations omitted). *Accord, Communications Workers of America v. Michigan Bell Telephone Co.,* 820 F.2d 189, 193–94 (6th Cir.1987). That doctrine is sound and we choose to follow it. The facial invalidity standard is a natural extension of the Supreme Court's long-standing presumption in favor of arbitration in labor cases. For example, when a labor agreement contains an arbitration clause, a court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986), *quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

Virginia Sprinkler argues, however, that the Ninth Circuit's facial invalidity standard should apply only where the parties to the labor agreement have indicated that arbitration is to be the exclusive method of resolving contract disputes. Here, Virginia Sprinkler argues, the parties expressly provided that arbitration would *not* be the exclusive means for resolving Article 3 disputes. Virginia Sprinkler relies on the clause in Article 3 stating that "[i]t is not intended that this Article be the exclusive source of rights or remedies which the parties may have under State or Federal laws."

Virginia Sprinkler's arguments are unpersuasive. Nothing in the language of Article 3 changes the strong presumption in favor of arbitration—the very presumption that underlies the Ninth Circuit's facial invalidity test. Arbitration is a mandatory procedure for resolving Article 3 disputes. Article 3 explicitly states that disputes arising under the article *"shall* be heard" by a special arbitrator. A method of dispute resolution may be mandatory even though it is not exclusive. Because there are alternatives does not abrogate the *prima inter pares* status of arbitration. Since the plain language of Article 3 mandates arbitration, the judicial presumption in favor of arbitration applies here. Thus, Virginia Sprinkler has shown no good reason not to apply the "facial invalidity" standard here.

### B. *Facial Validity*

Article 3 is not facially invalid. Appellant argues that Article 3 is unlawful on its face because it violates sections 7 and 9(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157, 159(b). Section 7 provides that employees not only "have the right to self-organization," but also have the right to refrain from collective bargaining. 29 U.S.C. § 157. Virginia Sprinkler argues that under Article 3, "once the arbitrator makes the decision that the two companies [Virginia Sprinkler and Virginia Pipe] are joint employers, he has no choice but to impose the wage and benefit conditions of the collective bargaining agreement on the second company." Such a result, argues the appellant, violates Section 7 of the NLRA by forcing Virginia Pipe's non-union employees to accept terms negotiated by the Union, even though they never agreed that the labor organization would represent them. Article 3 also violates Section 9 of the NLRA, according to Virginia Sprinkler, because it would impose the same terms on employees of both Virginia Sprinkler and Virginia Pipe without a determination that the workers of both companies constitute a single appropriate bargaining unit. *See* 29 U.S.C. § 159(b) (requiring National Labor Relations Board to decide the appropriate bargaining unit).

The district court appropriately rejected Virginia Sprinkler's arguments. The court

found that Article 3 was not facially invalid because it could plausibly be interpreted to avoid any possible conflict with sections 7 and 9(b) of the NLRA. The relevant portion of Article 3 provides that, upon a finding that the Virginia Sprinkler and Virginia Pipe have performed work as joint employers,

> the wage and fringe benefit terms and conditions of this Agreement shall be applicable to all such work performed on or after the effective date of this Agreement.

The district judge concluded that such language could mean, where there is joint performance, "that work done by the non-unionized company is treated as if the work had been done by [the] unionized company. The unionized company is to pay the unionized workers and to contribute to pension funds accordingly." Obviously such a result would deter Virginia Sprinkler from farming out work to non-union workers in other plants.

Under the district court's hypothetical reading, Virginia Pipe's non-unionized workers would not receive the wages and benefits mandated by the collective bargaining agreement and thus would in no way be forced to accept anything negotiated by a union not of their choosing. Sections 7 and 9(b) would simply not be implicated.

Virginia Sprinkler argues, however, that the interpretation propounded by the district court is not plausible because the evidence clearly shows that the parties intended Article 3 to mean something else and any arbitrator would be bound to give effect to the parties' intent. The argument has little merit.

■ First, the appellant argues that the Union is judicially estopped from arguing that an arbitrator could interpret Article 3 in the manner suggested by the district judge. Virginia Sprinkler asserts that the Union here has adopted a position directly contradictory to that taken in prior litigation. In those earlier cases, the Union argued that Article 3 required that non-union employees who perform work covered by the agreement be paid according to the terms of the collective bargaining agreement if the unionized company and the non-union company were found to be joint employers or a single, combined employer.

Judicial estoppel forbids a party under certain circumstances from asserting a legal position in conflict with one taken earlier in the same or related litigation. *United States v. 198.73 Acres of Land*, 800 F.2d 434, 436 (4th Cir.1986). The doctrine "prevent[s] the use of 'intentional self-contradiction ... as a means of obtaining unfair advantage' in court. *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir.1982), *quoting Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953). *Accord, Tenneco Chemicals, Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir.1982) ("the determinative factor is whether the appellant intentionally misled the court to gain unfair advantage").

Contrary to Virginia Sprinkler's argument, the doctrine of judicial estoppel does not apply here. The positions taken by the Union in the present case and in the earlier litigation are not inherently inconsistent. It is not inconsistent for one to seek a less broad interpretation now than one had sought before. No evidence exists that the Union has ever argued that Article 3 would forbid or preclude payment of wages and benefits to union employees for work done by non-union workers. By arguing in previous cases that Article 3 called for payment of union-level wages to non-union employees, the Union never expressly foreclosed the possibility that another method of accomplishing the Article's purposes might exist. The district judge's hypothetical interpretation and the position advocated by the Union in earlier cases merely present different methods of accomplishing the same end. In short, the Union has adopted no contradictory positions. Therefore, the doctrine of judicial estoppel does not forbid the Union from arguing in support of the district judge's plausible interpretation of Article 3.

■ In the alternative, Virginia Sprinkler has argued that the district court should have permitted discovery on the issue of the Union's intent in agreeing to

Article 3. The district court correctly refused such a request. The whole point of the facial invalidity test is to avoid enmeshing courts in detailed interpretations of the meanings of provisions that should instead be decided by the arbitrator. Unless the provision in question is patently invalid or unless it is obvious on the face of the language that the arbitration clause does not cover the dispute, the case should go to arbitration. *See AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419; *R.B. Electric,* 781 F.2d at 1442. Arbitration loses much of its value if one party can force protracted litigation and expensive discovery merely by raising questions about the parties' intent in adopting a particular contract provision.

Here the district court correctly held that Article 3 could plausibly be interpreted in a manner consistent with governing law. The court's conclusion was especially reasonable in light of the "savings clause" in Article 30 of the collective bargaining agreement, which provides that:

> [i]n accordance with the intent and agreement of the parties, the provisions of this Collective Bargaining Agreement shall be interpreted and construed in a manner which is consistent with all applicable Federal and State laws.

The savings clause suggests that the parties intended that an arbitrator could, if necessary to comply with governing law, provide a remedy not foreseen by the parties as long as that remedy remained faithful to their underlying objective in adopting Article 3.

■ As an alternative ground for our decision, we note that Article 3 would not be illegal on its face even if we were to accept Virginia Sprinkler's view that the provision must be interpreted as requiring, under certain circumstances, the payment of union-level wages and benefits to Virginia Pipe's non-unionized employees. Even under such an interpretation Article 3 could plausibly be construed as a permissible union standards (or work preservation) clause

rather than an illegal union signatory clause.

Union standards clauses prohibiting employers from contracting work normally performed by its union employees to others who are paid less than union wages are widely held to be permissible under the NLRA. *See NLRB v. Hotel & Restaurant Employees,* 623 F.2d 61, 67 (9th Cir.1980) (citing cases). Union signatory clauses on the other hand, prohibiting employers from contracting work to others not signatory to the collective bargaining agreement or otherwise approved by the Union, have been held to be illegal secondary pressure that violates the NLRA. *See id.* (citing cases). Virginia Sprinkler argues that the clause here is, in effect, an illegal union signatory clause.

Other courts have held that a clause such as the one in dispute before us may have the purpose of work preservation, at least to the point of not being unlawful on its face. *See, e.g., R.B. Electric,* 781 F.2d at 1441–42; *Road Sprinkler Fitters Local 669 v. Northstar Fire Protection Co.,* 644 F.Supp. 851, 854 (N.D.Tex.1986). It is perhaps particularly worthy of note that the *Road Sprinkler Fitters* case from the Texas district court involved both the same union that is a party here and interpretation of a similar clause, in fact one likely even more "signatory" in nature. The Texas district court in *Road Sprinkler Fitters* also noted that the NLRB had held the clause in dispute there not to be facially illegal. *Id.*

The distinction between a work preservation clause and a union signatory clause is not disturbed by the Second Circuit's decision in *Sperry Systems Management Division v. NLRB,* 492 F.2d 63 (2d Cir.1974),[2] a case relied on heavily by Virginia Sprinkler. In *Sperry* the contract provided that the Union would be the bargaining representative for certain technical employees at all plants operated by the employer, wherever located. The court refused to allow the Union to become bargaining representative

2. *Cert. denied sub nom. Local 445 International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Sperry Systems Management Division,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

**122**

for a new company plant in California—all the original plants covered were in New York—holding that imposition of economic terms raised "the possibility of serious infringements on the rights of those employees outside the unit...." *Id.* at 69. The *Sperry* holding is limited, however; the court did not rule that in no case could the employment terms of those outside the unit be properly the subject of bargaining; instead, it limited the propriety of this bargaining "to situations in which those terms 'vitally affect' the unit employees." 492 F.2d at 69–70, *quoting Chemical Workers, Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 179, 92 S.Ct. 383, 398, 30 L.Ed.2d 341 (1971).

We do not know in the case before us whether in fact the economic benefits given the non-unionized Virginia Pipe employees "vitally affect" the conditions and terms garnered by the unionized employees at Virginia Sprinkler. But that factual determination is irrelevant to our concerns here. It suffices that the clause is not illegal on its face.

Accordingly, we uphold the grant of summary judgment in favor of the Union.

AFFIRMED.