**WHITACRE P'SHIP v. BioSIGNIA, INC.**

[153 N.C. App. 608 (2002)]

WHITACRE PARTNERSHIP, Plaintiff v. BioSIGNIA, INC., T. NELSON CAMPBELL
AND T. COLIN CAMPBELL, Defendants

No. COA01-1549

(Filed 5 November 2002)

**Securities— conversion and wrongful cancellation—judicial estoppel—prior bankruptcy hearing**

The trial court erred by granting summary judgment for defendants based upon judicial estoppel in an action for conversion and wrongful cancellation of stock arising from statements made in a bankruptcy proceeding. There were issues involving the changed position element of judicial estoppel (whether the statements by a general partner at the bankruptcy proceeding were made as an individual or a partner and whether the certificates concerned were those listed as personal assets or those owned by plaintiff partnership); even if the statements are imputed to plaintiff, the general partner did not intentionally manipulate the truth if he was mistaken about the validity of restrictions on the stock; and dismissal of the bankruptcy petition was not an adjudication on the merits if statements misled or were accepted by the court.

Appeal by Plaintiff from judgment entered 13 July 2001 by Judge David Q. LaBarre in Orange County Superior Court. Heard in the Court of Appeals 11 September 2002.

*Farmer and Watlington, L.L.P., by R. Lee Farmer and Bill T. Walker, for plaintiff-appellant.*

*Parker, Poe, Bernstein, & Adams, P.C., by Robert W. Spearman, and Steptoe & Johnson, LLP, by J. William Koegel, Jr., for defendants-appellees.*

TYSON, Judge.

Whitacre Partnership appeals from an award of summary judgment in favor of defendants, BioSignia, Inc., T. Nelson Campbell and T. Colin Campbell entered 13 July 2001. We reverse and remand for further proceedings.

I. Facts

Whitacre Partnership ("Partnership" or "plaintiff") is an Illinois limited partnership. The general partners are Dr. Mark E. Whitacre

**WHITACRE P'SHIP v. BioSIGNIA, INC.**

[153 N.C. App. 608 (2002)]

and his wife, Ginger L. Whitacre, ("the Whitacres") and the limited partners are the children of the Whitacres. The Whitacres own as general partners 2% of the Partnership. Their children own the remaining 98% as limited partners.

BioSignia and Biomar are incorporated in the state of Delaware and are registered as foreign corporations doing business in North Carolina, with their principal place of business located in Chapel Hill, North Carolina. Defendants T. Nelson Campbell and T. Colin Campbell are co-founders and officers of BioSignia as well as its predecessor companies.

### A.  Stock Transactions

### 1.  Advocacy Communications, Inc.

Advocacy Communications, Inc. ("Advocacy"), a Delaware corporation, by stock certificate #9, issued 250 shares of stock to Mark E. Whitacre on 1 October 1995. These shares were transferred to plaintiff on 1 January 1996. In Advocacy's Unanimous Written Consent in Lieu of a Joint Special Meeting of the Board of Directors and Shareholders dated 26 April 1996, Advocacy ratified its hiring of Mark E. Whitacre as President, Chief Executive Officer, and Director of Advocacy as of 1 October 1995. Advocacy also ratified the issuance of 250 shares to Whitacre representing 20% of total ownership of Advocacy, "in lieu of payment of compensation in cash equal to $110,000 and for reimbursement of expenses incurred by Mark E. Whitacre in the amount of $40,000 . . ." The Unanimous Consent amended the certificate of incorporation to increase the number of authorized shares of common stock to 15 million. The consent resolved,

> that the officers of the Corporation and its counsel be, and they hereby are, authorized and directed to issue to each holder of record of an Old Share as of the close of business on the date of the Certificate of Amendment referred to in the foregoing resolution becomes effective, upon the surrender of their existing certificate or certificates for an Old Share, a certificate representing 8,000 New Shares of common stock with a par value of $0.00000125 per share for each Old Share of common stock represented by the certificate of such holder.

The consent was executed by Advocacy's shareholders including plaintiff as "Whitacre Partnership, a Limited Partnership by Mark E. Whitacre, General Partner." Dr. Whitacre and the Campbell

defendants also signed the Consent individually as directors of Advocacy.

Three days later, on 29 April 1996, Advocacy filed a certificate of amendment with the Delaware Secretary of State changing its corporate name to Biomar International, Inc. Two million shares of Biomar stock were issued to plaintiff on 30 April 1996, and the 250 shares of Advocacy stock were marked cancelled. No restrictive legend or other limiting indication appears on the face of either certificate.

### 2. Future Health Technologies Company

Dr. Whitacre allegedly commenced employment with Future Health Technologies Company ("FHT") in September 1995. Plaintiff alleges that FHT is an unincorporated entity. Dr. Whitacre and FHT agreed that he would be issued "20% of the outstanding shares of FHT" as part of the consideration for the employment contract. This agreement is confirmed in a letter dated 12 October 1995 signed by T. Colin Campbell and Mark E. Whitacre. The letter requires Dr. Whitacre to contribute "a total of $150,000 to FHT ('required contribution'). Any expense that you incur and pay prior to the placement date, and which we deem a reimbursable expense of FHT, will reduce the required contribution by the amount of such expense."

Under the terms of 12 October 1995 letter, Dr. Whitacre could not voluntarily retire from his position as Chief Executive Officer or otherwise terminate his continuing relationship with FHT before "FHT's first private placement" for the ownership of stock to be unqualified.

Dr. Whitacre and Defendant Nelson Campbell, "a corporate officer and co-founder of FHT," executed a Restricted Stock Agreement ("RSA"), effective 23 October 1995. The RSA refers to an "employment agreement" but not specifically the 12 October 1995 letter, and requires Dr. Whitacre to remain employed as an officer of FHT or one of its subsidiaries "for a period of five years in order to be fully vested" with respect to the stock. Neither the 12 October 1995 letter nor the RSA makes any reference to Advocacy.

### 3. Biomar International, Inc. and its Successor, BioSignia

Biomar issued share certificate #8 in the name of plaintiff for 2,000,000 shares dated 30 April 1996. Plaintiff received a letter from Biomar's attorney enclosing the certificate.

This stock certificate replaces the stock certificate of the original corporation, Advocacy Communications, Inc. The originals of

those certificates were marked cancelled and placed in the corporate book of Advocacy Communications, Inc. which is maintained in our office along with the corporate book of Biomar International, Inc.

Neither the cover letter nor the certificate contains any restrictive legend referencing a vesting schedule.

On 3 September 1996, Biomar issued stock certificate # 17 for 1,750,000 shares to Whitacre Partnership. On 15 January 1997, a federal grand jury indicted Dr. Whitacre on 45 counts of fraud and conspiracy. Neither Defendant BioSignia nor its predecessor entities were involved in any of the matters that led to the indictments. In early February 1997 upon request from Dr. Whitacre, Biomar also reissued 250,000 of plaintiff's shares, 150,000 and 100,000 shares respectively, in certificates # 18 and # 19 to attorneys, Bill T. Walker ("Walker") and Richard F. Kurth ("Kurth"). These two share certificates were allegedly backdated to 3 September 1996. The stock ledger notes the transfer of these shares from plaintiff. None of these stock certificates contained any evidence of vesting requirements or other restrictions on the face of the certificates.

On 11 February 1997, Dr. Whitacre resigned as President and Chief Executive Officer of Biomar. In his letter of resignation to Nelson Campbell, Dr. Whitacre agreed to forfeit 500,000 Biomar shares and tendered his share certificate. In accepting Dr. Whitacre's resignation, T. Colin Campbell acknowledged in a letter dated 20 February 1997 that the "total number of shares owned by your family partnership (prior to any share distributions to your attorneys) is 1,250,000 shares." Dr. Whitacre individually signed the letter under "Agreed to". The stock ledger records plaintiff's surrender of 750,000 shares.

As requested by Dr. Whitacre's resignation letter, Biomar issued stock certificate #21 was to W.F.P. Management Co., Inc. for 1,000,000 shares on 20 February 1997. The stock ledger indicates that this stock was a transfer from Whitacre Partnership. Biomar issued certificate #27, signed by defendant T. Colin Campbell, as President, and Nelson Campbell, as Secretary, also on 20 February 1997 to the plaintiff for the 1,000,000 shares at issue here. The stock ledger shows these shares were transferred from W.F.P. Management Co., Inc. Although the record is unclear, stock certificate #21 was apparently surrendered at this time. None of the stock certificates issued on 20 February 1997 bore a legend or any other restrictions concerning

the vesting of the shares nor did any of the correspondence be-
tween the parties reflect a discussion of restrictions on the stock or
its transfer.

Upon Dr. Whitacre's resignation as Chief Executive Officer of
Biomar, he was elected to serve as Chief Executive Officer of
Clintech, a new subsidiary of Biomar.

Following the resignation and hiring at Clintech, an Addendum to
the 23 October 1995 RSA was executed. It provided as follows:

> On March 4, 1997 this agreement was reached among the
> *Principals* of Biomar International, Inc. that Dr. Mark E.
> Whitacre would become the *CEO/President* of a subsidiary of
> Biomar to establish a joint venture company that will provide bio-
> statistical services to pharmaceutical companies and HMOs. In
> this position, 1.25 million shares of stock (including the shares
> used to pay attorneys) *will be maintained in the Whitacre
> Limited Partnership.* 50% of the 1.25 million shares will be
> vested in 1.5 years from the above date (¾/97), and 100% within
> four years.

(R. 200) (Emphasis supplied). The record does not indicate whether
any additional shares were issued after the RSA was amended. On 1
October 1997, Dr. Whitacre resigned his position as President and
Chief Executive Officer of the Company's subsidiary, Clintech.

### B. Bankruptcy Filing and Testimony

The Whitacres individually filed under Chapter 7 of the
Bankruptcy Code for discharge of their debts on 11 September 1997.
Plaintiff was not a party to this filing. 1.25 million shares of Biomar
stock owned by plaintiff were listed by the Whitacres as personal
property on Schedule B, which also stated that the shares were con-
ditioned on a restricted stock agreement.

On 24 October 1997, during the § 341 meeting of creditors in
the bankruptcy proceeding, the Whitacres, with their attorneys
present, testified under oath that they knowingly signed their sub-
missions under penalty of perjury and that they anticipated no more
amendments to them. Dr. Whitacre testified before the bankruptcy
trustee that the 1.25 million shares of stock, listed as restricted on
Schedule B, was an asset the Whitacres would not realize due to Dr.
Whitacre's 1 October 1997 resignation. The Whitacre's bankruptcy
petition was voluntarily dismissed by the Whitacres on 12 March

1998. No adjudication on the Whitacres' petition was entered by the bankruptcy court.

BioSignia cancelled share certificate #27 issued to plaintiff on or before 28 October 1999. Plaintiff filed this action on 8 May 2000 alleging wrongful cancellation of the stock and, in the alternative, conversion. After discovery closed in June 2001, BioSignia filed a motion for summary judgment, along with supporting memoranda and an affidavit of T. Nelson Campbell, asserting judicial estoppel. Oral argument was heard on 9 July 2001, and the Order granting summary judgment in favor of defendants was filed on 13 July 2001. Plaintiff appeals.

## II. Issues

Plaintiff assigns and argues as error the trial court's (1) grant of defendants' summary judgment on the basis of judicial estoppel and, (2)(a) denial of plaintiff's motion to strike and exclude the affidavit of T. Nelson Campbell, and (b) reliance on the affidavit, defective on its face in form and format, in rendering summary judgment.

## III. Standard of Review

Our Court's standard of review on appeal from summary judgment requires a two-part analysis. Summary judgment is appropriate if (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.

*Gaunt v. Pittaway*, 135 N.C. App. 442, 447, 520 S.E.2d 603, 607 (1999) (citing N.C.R. Civ. P. 56(c) (2001)). The evidence at a summary judgment hearing should be viewed in the light most favorable to the nonmoving party. *Purchase Nursery Inc. v. Edgerton*, 153 N.C. App. 156, 160, 568 S.E.2d 904, 907 (2002).

Applying this standard, we hold that genuine issues of material fact exist and that defendants are not entitled to judgment as a matter of law.

## IV. Judicial Estoppel

The trial court granted defendants' motion for summary judgment on the basis of judicial estoppel.

"Judicial estoppel, or preclusion against inconsistent positions, is an equitable doctrine designed to protect the integrity of the courts

and the judicial process." *Medicare Rentals, Inc. v. Advanced Services*, 119 N.C. App. 767, 769, 460 S.E.2d 361, 363, *disc. review denied*, 342 N.C. 415, 467 S.E.2d 700 (1995) (citing *Guiness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992)). "Judicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the *same or related litigation.*" *Id.* (citing *Virginia Sprinkler Co. v. Local Union 669*, 868 F.2d 116, 120 (4th Cir. 1989) (emphasis supplied)). The doctrine seeks to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a judicial forum. *Id.* (citing *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3rd Cir. 1953)). When an action pled is barred by a legal impediment, such as judicial estoppel, there are no triable issues of fact as a matter of law. *See Andrews v. Davenport*, 84 N.C. App. 675, 677, 353 S.E.2d 671, 673, *disc. review denied*, 319 N.C. 671, 356 S.E.2d 774 (1987).

The trial court found that plaintiff was precluded from asserting any claim to the stock because Dr. Whitacre made an inconsistent statement in a prior bankruptcy hearing. Defendants assert that the vesting of the stock was conditioned on Dr. Whitacre's continued employment with the Company. Dr. Whitacre told his creditors that the stock had not and would not vest while under oath in the § 341 bankruptcy hearing.

Defendants encourage this Court to adopt the federal court's test for judicial estoppel. This three-pronged test requires that (1) the estopped party assert a position that is factually inconsistent with that taken in prior litigation; (2) the estopped party intentionally mislead the court to gain an unfair advantage; and (3) the prior position be accepted by the court. *See Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (citation omitted).

This Court has taken a narrower view of the doctrine of judicial estoppel than that urged by defendants. In *Medicare Rentals, Inc.*, we stated "[j]udicial estoppel is a harsh doctrine and requires at a *minimum* that the party against whom the doctrine is asserted [(1)] intentionally have [(2)] changed its position in order to gain an advantage." *Medicare Rental's Inc.*, 119 N.C. App. at 771, 460 S.E.2d at 364 (emphasis supplied) (citation omitted). The defendants failed to show this minimum requirement as a matter of law.

## A. Changed Position

Plaintiff seeks a declaratory judgment on the legality of defendants' cancellation of the share certificate and, in the alternative, dam-

ages for conversion. Defendants issued the shares in the name of Whitacre Partnership. Plaintiff's claim of an enforceable interest in the stock is *factually inconsistent* with Dr. Whitacre's statements at the bankruptcy § 341 hearing that the shares had not vested.

"[A] general partner of a limited partnership has the rights and powers and is subject to the restrictions and liabilities of a partner in a partnership without limited partners." N.C.G.S. § 59-403(a) (2001).

> Every partner is an agent of the partnership *for the purpose of its business,* and the act of every partner, *including the execution in the partnership name of any instrument,* for *apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership,* unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. (Emphasis supplied).

N.C.G.S. § 59-39(a) (2001).

A question remains whether Dr. Whitacre's statements at the bankruptcy § 341 hearing were individual statements or whether the statements were made as general partner of plaintiff "for the purpose of its business, and . . . carrying on in the usual way the business of the partnership. . . ." N.C.G.S. § 59-39(a) (2001). There is also a factual inconsistency of whether Whitacre's statements applied to certificate #27, for 1,000,000 shares at issue here or the 1.25 million shares that were mentioned in the 4 March 1997 addendum to the RSA. The Whitacres listed 1.25 million shares on schedule B. Because the 1.25 million shares were listed as personal assets, but 1,000,000 were clearly owned by plaintiff, an issue of fact exists whether Dr. Whitacre's statements concerned plaintiff and were binding on plaintiff. Defendants have failed to show as a matter of law that Dr. Whitacre's statements, made at an individual bankruptcy § 341 hearing to which plaintiff was not a party, were "for the purpose of its business," and were made for "carrying on in the usual way the business of the partnership" so as to bind the partnership. N.C.G.S. § 59-39(a) (2001).

### B. Intentional Misleading

The second requirement for judicial estoppel is intentional misleading by the party estopped. Although Dr. Whitacre's statements could be imputed to the Partnership if the standard above was met,

there is no evidence that Dr. Whitacre intentionally misled the court. For Dr. Whitacre to mislead, he would have had to intentionally manipulate or hide the truth to gain an unfair advantage.

Dr. Whitacre would not be intentionally manipulating the truth if he was mistaken concerning the legal validity of the restrictions as to the plaintiff at the time of his statements.

In North Carolina, share certificates must bear a legend indicating any restrictions. N.C.G.S. § 55-6-27(b) (2001). The absence of the restrictive legend renders the restriction void unless the holder has "actual written notice" of the restriction. N.C.G.S. § 55-6-27(b). As noted, Defendants BioSignia and Biomar are Delaware corporations licensed to do business in North Carolina. Delaware has similar rules concerning share restrictions. Del. Code Ann. tit. 8, § 202(a) (2001) (requiring notation conspicuously on the certificates representing the securities restricted)). None of the multitude of share certificates issued by Defendant Biomar or its predecessor entities are restricted by a legend on the face of the certificate.

The original 250 shares of Advocacy Communications, Inc. stock were issued unrestricted on their face and are not referenced in either the letter of 12 October 1995 or the RSA dated 23 October 1995. The RSA of 23 October 1995 provides

'Restricted Shares' means all outstanding Provided Shares provided to the Employee in the Company and/or its subsidiaries or joint ventures pursuant to this Agreement; all shares hereinafter issued as Restricted Shares; all shares distributed with respect to any Restricted Shares in a share split, share dividend or other recapitalization, and any other outstanding Shares that otherwise become subject to this Agreement.

The referenced "Provided Shares" only applies to the shares to be provided to Dr. Whitacre upon joining FHT "or any future name for Future Health Technologies Company". It is undisputed that the two million shares in certificate #8 that Biomar issued to plaintiff replaced the original 250 Advocacy shares that were issued unrestricted.

Dr. Whitacre signed the RSA after the original Advocacy share certificate was issued without facial restrictions. A question remains whether the RSA as amended or any other purported restriction is legally sufficient to restrict plaintiff's shares. North Carolina General Statutes also provide, "[a] restriction does not affect shares issued

before the restriction was adopted unless the holders of the shares are parties to the restriction agreement or voted in favor of the restriction." N.C.G.S. § 55-6-27(a) (2001).

Share certificate #27 was issued for 1 million shares on 20 February 1997, before the addendum was entered into on 4 March 1997 by Dr. Whitacre and defendants. Plaintiff is not a party to the original RSA or the addendum. Dr. Whitacre did not execute the addendum in his capacity as general partner for plaintiff as he had signed the Unanimous Consent for Advocacy. A general partner of plaintiff, in that capacity, would have had to have voted to approve the restrictions in order to be retroactively effective. We hold that the 1.25 million shares issued before the 4 March 1997 addendum to the RSA are not restricted unless defendants can show that FHT is a predecessor corporation to Advocacy. While defendants assert in a footnote in their brief and affidavit that defendant BioSignia "was previously known as Future Health Technologies Company," such assertions are inadequate to prove that FHT is a predecessor corporation of Advocacy as a matter of law.

## C. Summary

Genuine issues of material fact exist to preclude summary judgment. Our state has taken a narrow view of judicial estoppel. *See Medicare Rentals, Inc., supra.* We find the doctrine inapplicable here. Judicial estoppel is no legal impediment to affirm summary judgment at bar.

Viewed in the light most favorable to plaintiff, Dr. Whitacre's statements that the shares were restricted were based upon agreements he signed individually to which plaintiff was not a party. Dr. Whitacre did not intentionally mislead the court or gain any unfair advantage by making assertions that may be inconsistent with the legality of the restrictions to the shares at issue.

FHT promised share ownership in the hiring letter of 12 October 1995. Dr. Whitacre had already been issued shares of Advocacy. There are significant discrepancies in the record involving the issuance of shares, the lack of a restrictive legend on the face of any of the certificates, and the original employment and other agreements between Dr. Whitacre and Advocacy, FHT, Biomar, BioSignia, or Clintech. Nothing in the corporate documents in the record reflects FHT's relationship, if any, to Advocacy, Biomar, BioSignia, or Clintech. None of the Advocacy corporate documents in the record refers to FHT.

Advocacy ratified the decision to employ Dr. Whitacre as its President, Chief Executive Officer, and Director, the issuance of the 250 shares, representing 20% ownership of the company, and provided that the authorized shares be increased to 15 million, with 8,000 shares to be issued for each share of Advocacy.

### D. Conclusion

We reverse summary judgment in favor of defendants on the basis of judicial estoppel. We hold that judicial estoppel is inapplicable to the facts at bar: (1) plaintiff was not a party to the prior bankruptcy proceeding, (2) defendants produced no evidence that Dr. Whitacre's statements were made in his capacity as a general partner of plaintiff or that these statements were made to carry on plaintiff's business in the usual way, and (3) dismissal of the Whitacres' bankruptcy petition was not an adjudication on the merits where statements misled or were accepted by the court.

We remand to the trial court for further proceedings consistent with this opinion. In light of our holding, it is unnecessary to reach, and we do not consider plaintiff's second assignment of error. The summary judgment entered in favor of defendants is reversed.

Reversed and remanded.

Judges McCULLOUGH and BRYANT concur.